**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: RODNEY CASSIMER MILES,
aka Rodney C. Miles, Rod Miles,
*Debtor,*

---

ANN R. MILES,
                   *Appellant,*

      v.

DAVID B. OKUN; SHEILA REISER-
OKUN; DAVID B. OKUN, M.D.,
F.A.C.P., a California Medical
Corporation, aka Okun
Corporation; DAVID B. OKUN,
M.D., F.A.C.P., a Medical
Corporation Money Purchase Plan,
aka Okun Pension Plan; OKUN
FAMILY TRUST U/D/T/ MARCH 10,
1988; EMMANUEL & ANN S.N.
REISER REVOCABLE TRUST, aka
Reiser Trust; ANDREW K. MAUTHE;
M. STEPHEN COONTZ; MILBURN A.
MATTHEWS; COONTZ & MATTHEWS
LLP; LAUREN ELIZABETH MURPHY;
SUSAN A. SPITZO; VERA J.
FERGUSON; NANCY M. VOLD,
                   *Appellees.*

No. 03-55963

BAP No.
CC-02-01528-KJP

16175

In re: RODNEY CASSIMER MILES,
aka Rodney C. Miles, Rod Miles,
*Debtor,*

MELINDA MILES,
*Appellant,*

v.

DAVID B. OKUN; SHEILA REISER-
OKUN; DAVID B. OKUN, M.D.,
F.A.C.P., a California Medical
Corporation, aka Okun
Corporation; DAVID B. OKUN,
M.D., F.A.C.P., a Medical
Corporation Money Purchase Plan,
aka Okun Pension Plan; OKUN
FAMILY TRUST U/D/T/ MARCH 10,
1988; EMMANUEL & ANN S.N.
REISER REVOCABLE TRUST, aka
Reiser Trust; ANDREW K. MAUTHE;
M. STEPHEN COONTZ; MILBURN A.
MATTHEWS; COONTZ & MATTHEWS
LLP; LAUREN ELIZABETH MURPHY;
SUSAN A. SPITZO; VERA J.
FERGUSON; NANCY M. VOLD,
*Appellees.*

No. 03-55964

BAP No.
CC-02-01529-KJP

In re: RODNEY CASSIMER MILES,
aka Rodney C. Miles, Rod Miles,
*Debtor,*

KELLY CUNNINGHAM,

*Appellant,*

v.

DAVID B. OKUN; SHEILA REISER-
OKUN; DAVID B. OKUN, M.D.,
F.A.C.P., a California Medical
Corporation, aka Okun
Corporation; DAVID B. OKUN,
M.D., F.A.C.P., a Medical
Corporation Money Purchase Plan,
aka Okun Pension Plan; OKUN
FAMILY TRUST U/D/T/ MARCH 10,
1988; EMMANUEL & ANN S.N.
REISER REVOCABLE TRUST, aka
Reiser Trust; ANDREW K. MAUTHE;
M. STEPHEN COONTZ; MILBURN A.
MATTHEWS; COONTZ & MATTHEWS
LLP; LAUREN ELIZABETH MURPHY;
SUSAN A. SPITZO; VERA J.
FERGUSON; NANCY M. VOLD,

*Appellees.*

No. 03-55965

BAP No.
CC-02-01537-KJP

In re: RODNEY CASSIMER MILES,
aka Rodney C. Miles, Rod Miles,
*Debtor,*

MELINDA MILES,

*Appellant,*

v.

DAVID B. OKUN; SHEILA REISER-
OKUN; DAVID B. OKUN, M.D.,
F.A.C.P., a California Medical
Corporation, aka Okun
Corporation; DAVID B. OKUN,
M.D., F.A.C.P., a Medical
Corporation Money Purchase Plan,
aka Okun Pension Plan; OKUN
FAMILY TRUST U/D/T/ MARCH 10,
1988; EMMANUEL & ANN S.N.
REISER REVOCABLE TRUST, aka
Reiser Trust; ANDREW K. MAUTHE;
M. STEPHEN COONTZ; MILBURN A.
MATTHEWS; COONTZ & MATTHEWS
LLP; LAUREN ELIZABETH MURPHY;
SUSAN A. SPITZO; VERA J.
FERGUSON; NANCY M. VOLD,

*Appellees.*

No. 03-55966

BAP No.
CC-02-01544-KJP

In re: RODNEY CASSIMER MILES,
aka Rodney C. Miles, Rod Miles,
                                    *Debtor,*

ANN R. MILES,

                                    *Appellant,*

                    v.

DAVID B. OKUN; SHEILA REISER-
OKUN; DAVID B. OKUN, M.D.,
F.A.C.P., a California Medical
Corporation, aka Okun
Corporation; DAVID B. OKUN,
M.D., F.A.C.P., a Medical
Corporation Money Purchase Plan,
aka Okun Pension Plan; OKUN
FAMILY TRUST U/D/T/ MARCH 10,
1988; EMMANUEL & ANN S.N.
REISER REVOCABLE TRUST, aka
Reiser Trust; ANDREW K. MAUTHE;
M. STEPHEN COONTZ; MILBURN A.
MATTHEWS; COONTZ & MATTHEWS
LLP; LAUREN ELIZABETH MURPHY;
SUSAN A. SPITZO; VERA J.
FERGUSON; NANCY M. VOLD,

                                    *Appellees.*

No. 03-55967

BAP No.
CC-02-01545-KJP

In re: RODNEY CASSIMER MILES,
aka Rodney C. Miles, Rod Miles,
*Debtor,*

KELLY CUNNINGHAM,
*Appellant,*

v.

DAVID B. OKUN; SHEILA REISER-
OKUN; DAVID B. OKUN, M.D.,
F.A.C.P., a California Medical
Corporation, aka Okun
Corporation; DAVID B. OKUN,
M.D., F.A.C.P., a Medical
Corporation Money Purchase Plan,
aka Okun Pension Plan; OKUN
FAMILY TRUST U/D/T/ MARCH 10,
1988; EMMANUEL & ANN S.N.
REISER REVOCABLE TRUST, aka
Reiser Trust; ANDREW K. MAUTHE;
M. STEPHEN COONTZ; MILBURN A.
MATTHEWS; COONTZ & MATTHEWS
LLP; LAUREN ELIZABETH MURPHY;
SUSAN A. SPITZO; VERA J.
FERGUSON; NANCY M. VOLD,
*Appellees.*

No. 03-55969

BAP No.
CC-02-01546-KJP

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Perris, Jellen, and Klein, Bankruptcy Judges, Presiding

Argued and Submitted
February 16, 2005—Pasadena, California

Filed December 12, 2005

Before: Andrew J. Kleinfeld, Kim McLane Wardlaw, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Wardlaw;
Concurrence by Judge Berzon

**COUNSEL**

Rodney C. Miles, Laguna Niguel, California, for the appellants.

Nanette D. Sanders and Michael B. Reynolds, Snell & Wilmer L.L.P., Irvine, California, for the appellees.

**OPINION**

WARDLAW, Circuit Judge:

Ann Miles, Melinda Miles, and Kelly Cunningham (collectively "Appellants") appeal from a decision of the United States Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") affirming the removal and dismissal of their state law causes of action for damages resulting from the filing of involuntary bankruptcy petitions against their relatives. We hold that because 11 U.S.C. § 303(i) completely preempts state law tort causes of action for damages predicated upon the filing of an involuntary bankruptcy petition, the bankruptcy court had "arising under" jurisdiction over the proceedings, and thus did not err in denying Appellants' motions to remand. Further, because Appellants lack standing to seek damages under § 303(i), the bankruptcy court properly dismissed their complaints.

I.

BACKGROUND

David Okun, Sheila Reiser-Okun, and several entities owned by or affiliated with the Okuns filed ten involuntary bankruptcy petitions against Rodney Miles, Ann Miles, and related businesses owned by or affiliated with the Miles's. The bankruptcy court dismissed Rodney's case on the ground

that he was generally paying his undisputed debts as they became due. It dismissed the remaining nine involuntary bankruptcy cases, including the one filed against Ann, on multiple grounds, one of which was that the petitions were filed in bad faith.[1] The bankruptcy court retained jurisdiction to determine the alleged debtors' rights to attorneys' fees, costs, and damages under 11 U.S.C. § 303(i).

After the bankruptcy court dismissed the involuntary bankruptcy cases, Ann and the Miles's daughters, Melinda Miles and Kelly Cunningham, filed three substantially identical tort actions in California state court seeking damages for the filing and prosecution of the involuntary petitions. The complaints alleged state law causes of action for negligence, defamation, false light, abuse of process, intentional and negligent infliction of emotional distress, and negligent misrepresentation. No Appellant sought damages arising from an involuntary petition filed against her. Rather, each Appellant sought damages arising solely from an involuntary petition filed against one or two of her relatives. The causes of action asserted by Melinda and Kelly were based on the bankruptcy court's finding that the involuntary petition against their mother, Ann, was filed in bad faith, and the bankruptcy court's dismissal of the involuntary petition against their father, Rodney, on the basis that he was generally paying his undisputed debts as they became due. The causes of action asserted by Ann were based solely on the bankruptcy court's dismissal of the involuntary petition against her husband, Rodney. The named defendants included the petitioning creditors in the involuntary bankruptcy actions, their lawyers, and the law firm's paralegals and secretaries who worked on the cases (collectively "Appellees").

Appellees removed the three actions from state court to

---

[1]In a memorandum disposition filed contemporaneously with this opinion, we address the bankruptcy court's dismissal of the involuntary bankruptcy cases, including the factual findings of bad faith.

bankruptcy court pursuant to 28 U.S.C. § 1452(a). They then filed motions to dismiss the removed complaints, contending that federal law preempted all of the state law causes of action pleaded in the complaints. While these motions were pending, Appellants moved for remand under 28 U.S.C. § 1452(b) on the premises that the removal was untimely and that there was no federal jurisdiction over damages claims by third parties resulting from the filing of an involuntary bankruptcy petition.

The bankruptcy court refused to remand the state law causes of action, holding that it had "arising under" jurisdiction over those causes of action because they were completely preempted by 11 U.S.C. § 303(i). It then dismissed the complaints on the basis that § 303(i) does not authorize damages for third parties who claim to be harmed by the filing of an involuntary bankruptcy petition. The BAP affirmed the reasoning and ultimate decision of the bankruptcy court in a published opinion, *Miles v. Okun* (*In re Miles*), 294 B.R. 756 (B.A.P. 9th Cir. 2003), and this appeal ensued. Because appeals from the BAP are subject to de novo review, we independently review the bankruptcy court's decision. *Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc.* (*In re Vortex Fishing Sys., Inc.*), 277 F.3d 1057, 1064 (9th Cir. 2002).

## II.

### REMOVAL JURISDICTION

Appellants challenge the bankruptcy court's exercise of removal jurisdiction. To analyze this issue, we must determine whether jurisdiction over Appellants' state law tort actions existed in the district court to support the bankruptcy court's derivative jurisdiction. *See Dunmore v. United States*, 358 F.3d 1107, 1113 (9th Cir. 2004).

**[1]** Jurisdiction was premised on 28 U.S.C. § 1452(a), which provides for removal of a state action "to the district

court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334(b), in turn, provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

The bankruptcy court and the BAP held that because 11 U.S.C. § 303(i) completely preempts state law tort actions for damages resulting from the filing of an involuntary bankruptcy petition, Appellants' complaints necessarily "arise under" title 11, and thus were removable under 28 U.S.C. § 1452(a). *See In re Miles*, 294 B.R. at 762. Appellants contend that their claims are not preempted and that, in any event, removal based on complete preemption was improper. We review de novo the denial of a motion to remand an action to state court for want of removal jurisdiction. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 996 (9th Cir. 1987).

## A. General Principles of "Arising Under" Jurisdiction

The "arising under" language of 28 U.S.C. § 1334(b) is analogous to the "arising under" language of 28 U.S.C. § 1331. *See New England Power & Marine, Inc. v. Town of Tyngsborough* (*In re Middlesex Power Equip. & Marine, Inc.*), 292 F.3d 61, 68 (1st Cir. 2002); 1 *Collier on Bankruptcy* ¶ 3.01[4][c][i] (L. King et al. eds., 15th rev. ed. 2001). Therefore, we draw freely from authorities discussing the circumstances under which a case "arises under" federal law within the meaning of § 1331. *See Hunter v. United Van Lines*, 746 F.2d 635, 639 (9th Cir.), *cert. denied*, 474 U.S. 863 (1985).

[2] In general, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). A defense is not part of a plaintiff's properly pleaded statement of his claim. *See Gully v. First Nat'l Bank*

*in Meridian*, 299 U.S. 109, 113 (1936). Therefore, "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12 (1983).

**[3]** The "complete preemption doctrine" provides an exception to this general proposition. The Supreme Court has concluded that the preemptive force of some federal statutes is so strong that they "completely preempt" an area of state law. *Taylor*, 481 U.S. at 63-64. "In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000).

The Supreme Court has construed only three federal statutes to so preempt their respective fields as to authorize removal of actions seeking relief exclusively under state law: section 301 of the Labor and Management Relations Act ("LMRA"), 29 U.S.C. § 185; section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132; and sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86. *See Avco Corp. v. Machinists*, 390 U.S. 557, 561-62 (1968); *Taylor*, 481 U.S. at 65-67; *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-11 (2003). Most recently, in *Beneficial National Bank*, the Court clarified that removal is proper under the complete preemption doctrine only when Congress intended the federal cause of action to be exclusive. *Beneficial Nat'l Bank*, 539 U.S. at 8-9 & n.5. Finding that sections 85 and 86 of the National Bank Act provided the exclusive cause of action for usury claims against national banks, the Court held that the plaintiffs' cause of action arose under federal law, and therefore could be removed to federal court. *Id.* at 11.

**[4]** Appellants' properly pleaded complaints allege only California state law causes of action and seek relief exclusively under those laws. Therefore, the dispositive question is whether Congress intended 11 U.S.C. § 303(i) to provide "the exclusive cause of action" for damages resulting from the filing of an involuntary bankruptcy petition. *See id.* at 8-9 & n.5; *see also Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1042 (9th Cir. 2003) (analyzing whether plaintiff's state law cause of action was completely preempted by section 27 of the 1934 Securities and Exchange Act). If so, then Appellants' causes of action necessarily arise under title 11, and their claims are removable under 28 U.S.C. § 1452(a). If not, then Appellants' complaints do not arise under title 11 and are not removable under § 1452(a) pursuant to the "arising under" provision of 28 U.S.C. § 1334(b).

### B.  Congress's Intent with Respect to 11 U.S.C. § 303(i)

**[5]** The Bankruptcy Code and its legislative history are silent on whether Congress intended 11 U.S.C. § 303(i) to provide the exclusive basis for awarding damages predicated upon the filing of an involuntary bankruptcy petition. Therefore, we look to the structure and purpose of the Bankruptcy Code to determine whether Congress did indeed intend for § 303(i) to provide the exclusive cause of action. *See Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 495 (9th Cir. 2005). Although we have not addressed this precise issue, we have previously held that state law malicious prosecution actions are completely preempted by the structure and purpose of the Bankruptcy Code. *See MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 916 (9th Cir. 1996).

**[6]** In *MSR Exploration*, plaintiffs brought a state law action for malicious prosecution against defendants in federal district court, claiming that the defendants had maliciously filed and pursued creditors' claims in the plaintiffs' Chapter 11 bankruptcy proceeding. *Id.* at 911. The district court dis-

missed for lack of jurisdiction, finding the action completely preempted by the Bankruptcy Code. *Id.* We agreed that state malicious prosecution actions for events taking place within bankruptcy court proceedings are completely preempted by the Bankruptcy Code. *Id.* at 916. Our reasoning was based on (1) Congress's placement of bankruptcy jurisdiction exclusively in the federal district courts as an initial matter, *id.* at 913-14; (2) the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code," which "create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike," and which needs to be "jealously guard[ed] . . . from even slight incursions and disruptions" from state malicious prosecution actions, *id.* at 914; (3) the Founders' grant of power to Congress "to establish . . . uniform Laws on the subject of Bankruptcies throughout the United States," Art. I, § 8, cl. 4, for the purpose of uniform administration and regulation of the parties before the bankruptcy court; and (4) the extensive federal remedies for improper conduct in bankruptcy proceedings provided by the Bankruptcy Code, which "suggests that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents." *MSR Exploration*, 74 F.3d at 915.

**[7]** We are compelled by the logic of our decision in *MSR Exploration* to hold that Congress intended 11 U.S.C. § 303(i) to provide the exclusive basis for awarding damages predicated upon the filing of an involuntary bankruptcy petition. *See id.* at 913-16; *see also Gonzales v. Parks*, 830 F.2d 1033, 1035-36 (9th Cir. 1987) (holding that state courts lack jurisdiction over a claim that the filing of a bankruptcy petition constitutes an abuse of process). As we noted in *MSR Exploration*, Congress provided a number of remedies in the Bankruptcy Code to deter misuse of the bankruptcy process, including § 303(i). *See MSR Exploration*, 74 F.3d at 915. The Revision Notes and Legislative Reports to the Bankruptcy Reform Act of 1978 indicate that Congress utilized both the

bonding requirements of § 303(e) and the damages provision of § 303(i) as means of regulating abuse of the involuntary bankruptcy process it created:

> The court may, under subsection (e), require the petitioners to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i). Subsection (i) provides for costs, attorneys fees, and damages in certain circumstances. The bonding requirement will discourage frivolous petitions as well as spiteful petitions based on a desire to embarrass the debtor (who may be a competitor of a petitioning creditor) or to put the debtor out of business without good cause. An involuntary petition may put a debtor out of business even if it is without foundation and is later dismissed.

11 U.S.C. § 303 (Historical and Statutory Notes, Revision Notes and Legislative Reports, 1978 Acts). Moreover, as the BAP noted, § 303(i)'s remedial scheme is comprehensive in that it specifically addresses the full range of remedies, from costs and attorneys' fees for dismissed involuntary petitions to compensatory and punitive damages for involuntary petitions filed in bad faith. *See* 11 U.S.C. § 303(i).

Congress's authorization of certain sanctions under § 303(i) for involuntary bankruptcy petitions filed in bad faith suggests that Congress rejected other penalties, including the kind of substantial damage awards that might be available in state court tort actions. *See id.*; *Gonzales*, 830 F.2d at 1035-36. A debtor who believes an involuntary petition was filed in bad faith has a comprehensive scheme of remedies available in the federal courts. The existence of this comprehensive scheme precludes collateral attacks on such filings in state courts. *Glannon v. Garrett & Assocs., Inc.*, 261 B.R. 259, 264 (D. Kan. 2001).

Furthermore, as a policy matter, the potential costs of filing an involuntary bankruptcy petition should not be governed by

state law. "[I]t is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives and penalties shall be utilized." *Gonzales*, 830 F.2d at 1036. Congress created involuntary bankruptcy proceedings to enable creditors who are unable to extract preferences or unequal transfers from distressed debtors to achieve equitable treatment. *See In re Miles*, 294 B.R. at 760. Allowing state court remedies for wrongful filings may well interfere with the filings of involuntary bankruptcy petitions by creditors and with other necessary actions that they, and others, must or might take within the confines of the bankruptcy process. *See MSR Exploration*, 74 F.3d at 916.

Finally, here, as in *MSR Exploration*, the threat exists that the exclusive jurisdiction of the bankruptcy court will be invaded and that uniformity will be undercut. "Congress has expressed its intent that bankruptcy matters be handled in a federal forum by placing bankruptcy jurisdiction exclusively in the district courts as an initial matter." *Id.* at 913 (citing 28 U.S.C. § 1334(a)). Furthermore, the need for uniformity in the administration of the bankruptcy laws persuaded the Framers to expressly grant Congress the power "to establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." Art. I, § 8, cl. 4. Permitting state courts to decide whether the filing of an involuntary bankruptcy petition was appropriate would subvert the exclusive jurisdiction of the federal courts and undermine uniformity in bankruptcy law by allowing state courts to create their own standards as to when a creditor may properly file an involuntary petition. *See MSR Exploration*, 74 F.3d at 913-15.

Therefore, we hold that 11 U.S.C. § 303(i) provides the exclusive cause of action for damages predicated upon the filing of an involuntary bankruptcy petition. The "highly complex" nature of the Bankruptcy Code, *id.* at 914, and "the unique, historical, and even constitutional need for uniformity in the administration of bankruptcy laws," *id.* at 915, under-

mine the argument that we can infer from Congress's failure to create a federal remedy for third parties that it intended to allow such parties to pursue state court litigation as a form of collateral attack on involuntary bankruptcy proceedings. When Congress enacted the comprehensive Bankruptcy Reform Act of 1978 after a decade-long debate, it could not have gone unrecognized that debtors' immediate family members might also suffer the same types of harm or emotional distress as their family members who are subject to involuntary bankruptcy proceedings. Yet Congress determined that bankruptcy courts could award damages predicated on the bad faith filing of involuntary petitions only to the debtors themselves—those participants in involuntary bankruptcy proceedings who suffer most directly the harm from frivolous or spiteful filings. The relevant Senate and House Reports state:

> [I]f a petitioning creditor filed the petition in bad faith, the court may award *the debtor* any damages proximately caused by the filing of the petition. These damages may include such items as loss of business during and after the pendency of the case, and so on.

H.R. Rep. No. 95-595, at 324 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6280 (emphasis added); S. Rep. No. 95-989, at 34 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5820 (identical text). Because Congress intended the Bankruptcy Code to create a whole scheme under federal control that would adjust *all* of the rights and duties of creditors and debtors alike, *see MSR Exploration*, 74 F.3d at 914, we can infer from Congress's clear intent to provide damage awards only to the debtor in federal proceedings predicated upon the bad faith filing of an involuntary petition that Congress did not intend third parties to be able to circumvent this rule by pursuing those very claims in state court.

### C.   Complete Preemption

**[8]** Like section 301 of the LMRA, section 502 of ERISA, and sections 85 and 86 of the National Bank Act, § 303(i) of the Bankruptcy Code "provide[s] the exclusive cause of action for the claim[s] asserted and also set[s] forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank*, 539 U.S. at 8. Therefore, complete preemption is appropriate here, despite Appellants' argument that if they do not have standing to recover damages under § 303(i), their causes of action cannot "arise under" title 11.[2] The test for complete preemption set forth by the Supreme Court in *Beneficial National Bank* does not also require that Congress permit third parties to recover under the exclusive federal cause of action it created as a predicate to federal removal jurisdiction. *See id.* at 11 (holding that the plaintiffs' cause of action arose under federal law because sections 85 and 86 of the National Bank Act provide the exclusive cause of action for usury claims against national banks, and thus there is "no such thing as a state-law claim of usury against a national bank"). Any possible error made by Congress in granting or designing relief does not affect the jurisdiction of the bankruptcy court. *See Caterpillar*, 482 U.S. at 391 n.4 (" 'The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy.' " (quoting *Avco*, 390 U.S. at 561)).[3] It is for Congress to decide what penalties

---

[2]In Part III of this Opinion, we hold that Appellants lack standing to recover damages under 11 U.S.C. § 303(i).

[3]Our cases holding that there is no ERISA preemption when the plaintiff lacks standing to bring a federal claim are not helpful to Appellants. *See, e.g.*, *Curtis v. Nev. Bonding Corp.*, 53 F.3d 1023, 1027 (9th Cir. 1995) (establishing that "a plaintiff's standing to enforce ERISA is a prerequisite to both subject matter jurisdiction and ERISA preemption"); *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 934 (9th Cir. 1994) (holding that, for plaintiffs outside the enumerated categories of those able to seek relief under ERISA's civil enforcement provisions, their

are appropriate for use in connection with the bankruptcy process, when those penalties shall be utilized, and who may benefit from them. *See Gonzales*, 830 F.2d at 1036. If individuals, such as Appellants, are not satisfied with the remedies available under the Bankruptcy Code, they should look to Congress, not the state courts, to supplement the available remedies. *See Glannon*, 261 B.R. at 266-67 (holding that plaintiff could not avoid the effect of limited federal remedies by filing a state law claim against defendants who were not liable or subject to sanction under federal law).

[9] We do not hold that all state actions related to bankruptcy proceedings are subject to the complete preemption doctrine. We recognize that "because the common law of the various states provides much of the legal framework for the operation of the bankruptcy system, it cannot be said that Congress has completely preempted all state regulation which may affect the actions of parties in bankruptcy court." *Koffman v. Osteoimplant Tech., Inc.*, 182 B.R. 115, 124 (D. Md. 1995). However, "[r]emedies and sanctions for improper behavior and filings in bankruptcy court . . . are matters on

state claims were not preempted). First, as we explained in *Peralta v. Hispanic Business, Inc.*, these were claims "only loosely related to ERISA," with an "insufficient relation to the benefit plan for preemption to attach." 419 F.3d 1064, 1069 (9th Cir. 2005). By contrast, the state law claims raised by Appellants here would force state courts to pass judgment on involuntary bankruptcy petitions and tread heavily into an area where Congress has created an exclusive federal remedy. Second, the ERISA cases were decided before *Beneficial National Bank v. Anderson*, which expanded the scope of the complete preemption analysis. *Beneficial Nat'l. Bank*, 539 U.S. 1, 16-17 (Scalia, J., dissenting). After *Beneficial National Bank*, we are instructed to focus not on the parties protected but on whether Congress intended to provide an "exclusive cause of action." *Id.* at 9 & n.5. We believe that Congress intended § 303(i) to do so. Finally, as discussed above, bankruptcy has "unique, historical and even constitutional need[s] for uniformity" which are absent from the ERISA context and further justify a finding of complete preemption. *MSR Exploration*, 74 F.3d at 915.

which the Bankruptcy Code is far from silent and on which uniform rules are particularly important." *Id.* Therefore, we hold that 11 U.S.C. § 303(i) completely preempts state law tort actions for damages predicated upon the filing of an involuntary bankruptcy petition.

**[10]** As in *MSR Exploration*, Appellants' complaints are "self-consciously and entirely one[s] which seek[ ] damages for [claims] filed and pursued in the bankruptcy court." *MSR Exploration*, 74 F.3d at 912. The complaints state on their faces that Appellants seek damages for the filing and prosecution of the involuntary bankruptcy petitions against their relatives. Appellants go so far as to specifically allege that "[t]hese various bankruptcy filings and/or prosecution of them caused great emotional, physical, mental and psychological suffering and distress, embarrassment, anxiety, fear, worry and humiliation to [Appellants] and other members of the family." Because Appellants' complaints allege state law tort causes of action for damages entirely predicated upon the filing and prosecution of involuntary bankruptcy petitions, they necessarily "arise under" title 11,[4] and thus were removable under 28 U.S.C. § 1452(a). Accordingly, the bankruptcy court did not err in denying Appellants' motions to remand.[5]

---

[4]Because we find that the bankruptcy court had "arising under" jurisdiction, we need not address whether it had "arising in" or "related to" jurisdiction. *See* 28 U.S.C. § 1334(b).

[5]We conclude that Appellants' causes of action depend on title 11 for their existence and could not proceed in another court. Therefore, the proceedings are "core" proceedings. The bankruptcy court had derivative jurisdiction to hear, determine, and enter final orders and judgments. *See Dunmore*, 358 F.3d at 1113-14 (explaining a bankruptcy court's two tiers of judicial authority, depending on whether the proceeding before it is "core" or "non-core").

## III.

## DISMISSAL OF APPELLANTS' COMPLAINTS

Nor did the bankruptcy court err in dismissing Appellants' complaints. It correctly determined that these parties lack standing to recover damages under 11 U.S.C. § 303(i) for bad faith filings of involuntary bankruptcy petitions.[6]

[11] Section 303(i) provides, in full:

> (i)   If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
>> (1)   *against the petitioners and in favor of the debtor* for—
>>
>>> (A)   costs; or
>>>
>>> (B)   a reasonable attorney's fee; or
>>
>> (2)   *against any petitioner* that filed the petition in bad faith, for—
>>
>>> (A)   any damages proximately caused by such filing; or
>>>
>>> (B)   punitive damages.

---

[6]Because the state law tort causes of action alleged by Appellants are completely preempted by 11 U.S.C. § 303(i), Appellants' complaints are recharacterized as alleging damages claims under § 303(i). *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 958 (9th Cir. 2002) ("[C]omplete preemption 'recharacterizes' a complaint with state law claims into one arising under federal law.").

11 U.S.C. § 303(i) (emphasis added). The statute is ambiguous as to whether damages under § 303(i) can be awarded only in favor of the debtor or in favor of other parties. One possible reading is that by mentioning only the debtor and the petitioning creditors in § 303(i)(1), Congress intended to limit standing to the debtor. Another possible reading, however, is that by omitting the words "and in favor of the debtor" included in § 303(i)(1) from § 303(i)(2), Congress intended persons other than the debtor to have standing to recover damages for bad faith filings of involuntary petitions. Because the language is ambiguous, we consider legislative history, relevant case law, and public policy to resolve the question. *See Barstow v. IRS* (*In re Bankr. Estate of MarkAir, Inc.*), 308 F.3d 1038, 1043-46 (9th Cir. 2002) (considering legislative history, relevant cases, and public policy considerations in interpreting 11 U.S.C. § 724(b)).

As we noted earlier, the relevant House and Senate Reports provide evidence that Congress intended only the debtor to recover damages resulting from an involuntary bankruptcy proceeding filed in bad faith:

> [I]f a petitioning creditor filed the petition in bad faith, the court may award *the debtor* any damages proximately caused by the filing of the petition. These damages may include such items as loss of business during and after the pendency of the case, and so on.

H.R. Rep. No. 95-595, at 324 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6280 (emphasis added); S. Rep. No. 95-989, at 34 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5820 (identical text).

**[12]** In addition, reading § 303(i)(2) to allow third parties to seek damages could invite abuse of the system. The introductory clause to § 303(i) provides that "the debtor" may waive the right to judgment, which would then enable the

debtor to waive the third parties' damages. If such were the case, "debtors could extort payments from either the petitioning creditors or the non-debtors seeking damages, in exchange for either waiving or not waiving the damages claims." *Franklin v. Four Media Co.* (*In re Mike Hammer Prods., Inc.*), 294 B.R. 752, 754 (B.A.P. 9th Cir. 2003). The possible abuse of the involuntary bankruptcy process that could result makes it unlikely that Congress intended to permit third parties to seek damages under § 303(i)(2), as it took great care to build into the Code provisions that would prevent abuse of the process.

[13] Finally, reading § 303(i) to limit standing to the debtor is consistent with the admittedly rather sparse authority addressing this issue. *See id.* at 755 (holding that § 303(i)(2) "does not give standing to third parties to recover damages from a bad-faith involuntary petitioner"); *In re Ed Jansen's Patio, Inc.*, 183 B.R. 643, 644 (Bankr. M.D. Fla. 1995) ("Even a cursory reading of this statute reveals that the relief set forth in § 303(i) is available only to the debtor.").[7]

[14] Therefore, we hold that Appellants do not have standing to recover damages under § 303(i) for bad faith filings of involuntary bankruptcy petitions. Accordingly, the bankruptcy court was correct in dismissing their complaints.

**AFFIRMED.**

---

BERZON, Circuit Judge, concurring in part and concurring in the result:

I concur in Parts I and III of the majority opinion, except

---

[7]We leave open, however, the question of whether non-petitioning creditors may seek damages under § 303(i)(2).

for footnote 6, and I concur in the result reached by the majority in Part II.

I agree that there was removal jurisdiction in the present case. I write separately because my reason for so concluding differs from that of the majority.

*Gonzales v. Parks* held that all actions, such as the present one, that collaterally attack bankruptcy petitions are within the *exclusive* jurisdiction of the federal courts under 28 U.S.C. § 1334(a). *See* 830 F.2d 1033, 1035 & n.6 (9th Cir. 1987) (stating that "[f]ilings of bankruptcy petitions are a matter of exclusive federal jurisdiction" and that "[s]tate courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one" because "[s]uch an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts"); *id.* at 1036 ("A Congressional grant of exclusive jurisdiction to the federal courts includes the implied power to protect that grant."); *id.* (stating that "[a] state court judgment entered in a case that falls within the federal courts' exclusive jurisdiction is subject to collateral attack in the federal courts" and concluding that therefore "the bankruptcy court was correct in vacating the state court judgment"). It follows that there is original federal jurisdiction over the present case under § 1334(a) and removal jurisdiction under § 1441.[1]

---

[1]*Things Remembered, Inc. v. Petrarca* held that both §§ 1441 and 1452 govern removal in bankruptcy cases. *See* 516 U.S. 124, 129 (1995) ("There is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy."). Thus, the fact that the state court lacked jurisdiction does not defeat removal jurisdiction. *See* 28 U.S.C. § 1441(f) ("The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.").

I agree with the majority that the state law claims in the present case are *preempted* because state law cannot add to the remedial scheme Congress created under the Bankruptcy Code. This result follows directly from our opinions in *Gonzales* and *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir. 1996). It is not clear to me, however, that the state law claims are *completely preempted* in the sense discussed in *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), and its predecessor cases.

Unlike the majority, I do not read *Beneficial National Bank* to have changed the law regarding whether standing to bring a federal claim is necessary to find complete preemption. Instead, I believe that the cases decided in the ERISA context holding the contrary are still good law. *See, e.g.*, *Curtis v. Nev. Bonding Corp.*, 53 F.3d 1023, 1027 (9th Cir. 1995) (holding that "plaintiff's standing to enforce ERISA is a prerequisite to . . . subject matter jurisdiction"); *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 934 (9th Cir. 1994) (holding that because the plaintiffs are not in one of the enumerated categories of parties entitled to seek relief under ERISA's civil enforcement provisions, their state claims are not completely preempted by ERISA); *see also Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1240 (11th Cir. 2001) ("Under the doctrine of complete preemption, a plaintiff must have standing to sue under a relevant ERISA plan before a state law claim can be recharacterized as arising under federal law, subject to federal court jurisdiction.").[2]

Indeed, the majority's broad reading of *Beneficial National Bank* would to a degree swallow the well-pleaded complaint rule, by permitting removal to federal court in any circumstance in which federal law provides *someone* a cause of

---

[2]*Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064 (9th Cir. 2005), is not to the contrary, as it addressed neither *Beneficial National Bank* nor the standing rationale articulated in the ERISA complete preemption cases.

action and also precludes state law causes of action. Yet, state courts are for the most part thought competent to deal with such circumstances, by applying the Supremacy Clause when a preemption defense is raised to a state law cause of action. Only where federal law provides a particular class of plaintiffs with a federal cause of action is the case "completely preempted" in the special sense discussed in *Avco Corp. v. Machinists*, 390 U.S. 557 (1968), and its progeny. Put another way, just because a state law cause of action is *entirely* preempted by a federal statute, providing an iron-clad defense in state court, does not mean that it is "completely preempted" in the choice-of-law sense that governs removal jurisdiction. Odd use of language, perhaps, but one that has remained consistent for many years and was not changed by *Beneficial National Bank.*

In short, there is removal jurisdiction under the exclusive jurisdiction rationale described above. I see no reason to expand the troublesome and confusing doctrine of complete preemption, *see Beneficial Nat'l Bank*, 539 U.S. at 11-22 (Scalia, J., dissenting), as there is another, simpler ground for reaching the same result. I therefore would not reach the question of whether there is complete preemption in this case.