PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 15-2622

———————

SARA ROSENBERG,
INDIVIDUALLY AND AS TRUSTEE OF THE
DOUGLAS ROSENBERG 2004 TRUST,
SEPARATELY AND AS GENERAL PARTNER OF
THE PENNSYLVANIA LIMITED PARTNERSHIPS
209 CHESTNUT ST. ASSOC., LP;
1501 EDGEMONT ASSOCIATES, LP;
1538 DEKALB ASSOCIATES, LP;
1561 MEDICAL DRIVES ASSOCIATES, LP;
IMAGING PROPERTIES OF ILLINOIS, LP;
IMAGING PROPERTIES OF PHILADELPHIA, LP;
IMAGING PROPERTIES OF ROXBOROUGH, LP;
LANE LIMITED PARTNERSHIP, IV,
                                        Appellants

v.

DVI RECEIVABLES XVII, LLC; DVI FUNDING, LLC;
JANE FOX;  LYON FINANCIAL SERVICES INC, d/b/a
U.S. BANK PORTFOLIO SERVICES;
U.S. BANK NA, A NATIONAL ASSOCIATION
ORGANIZED IN MINNESOTA

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-05608)
District Judge: Honorable Cynthia M. Rufe

_____

Argued March 1, 2016

Before: AMBRO, JORDAN and SCIRICA, <u>Circuit Judges</u>

(Opinion filed:  August 29, 2016)

Lewis J. Pepperman          (ARGUED)
Stark & Stark
993 Lenox Drive, Building 2
Lawrenceville, NJ   08648

Tucker H. Byrd
Scottie N. McPherson
180 Park Avenue North, Suite 2A
Winter Park, FL   32789

          Counsel for Appellants

Craig A. Hirneisen
Stacey A. Scrivani
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, PA   19603

Peter H. Levitt        (ARGUED)
Jack C. McElroy
Shutts & Bowen
200 South Biscayne Boulevard
Suite 4100
Miami, FL 33131

      Counsel for Appellees

---

## OPINION OF THE COURT

---

AMBRO, Circuit Judge

This appeal presents a question of federal preemption law. In November 2008, DVI Funding, LLC and several entities known as DVI Receivables filed involuntary bankruptcy petitions against Maury Rosenberg and his affiliated businesses. After the Bankruptcy Court dismissed the involuntary petitions, Rosenberg recovered attorney's fees, costs, and damages under § 303(i) of the Bankruptcy Code. Now Rosenberg's wife and several limited partnerships associated with Rosenberg—persons and entities not named in the bankruptcy—have brought a tortious interference claim under state law for damages allegedly caused by the filing of the involuntary petitions. The District Court concluded that this claim was preempted by the Bankruptcy Code and dismissed the complaint. For the reasons that follow, we reverse and remand, as we conclude that § 303(i) does not preempt the state law claims of non-debtors predicated on the filing of an involuntary bankruptcy petition.

3

# I.

It is an understatement to say that the factual background and procedural history lurking behind this case are complex. Our appeal is but one fragment of more than a decade of ongoing litigation between Maury Rosenberg and his medical imaging centers on the one side and U.S. Bank and its affiliated entities on the other. By our estimate, that litigation has produced 27 written opinions at almost every level of the federal judiciary. But lucky for us (and our readers), this case turns on a narrow question of federal preemption law.

Rosenberg is the "principal architect" of National Medical Imaging, LLC ("NMI") and National Medical Imaging Holding Company, LLC ("NMI Holding"). NMI and NMI Holding are affiliated with various limited partnerships ("NMI LPs") that operate medical imaging centers. To finance the purchase of medical imaging equipment, the NMI LPs entered into leases with DVI Financial Services, Inc., who transferred the leases to DVI Funding, LLC. DVI Funding then held onto some of the leases directly and securitized the rest, transferring them to various entities with DVI Receivables in the name. DVI Financial was the initial servicer of the leases and U.S. Bank acted as trustee. When DVI Financial entered bankruptcy in 2004, Lyon Financial, a subsidiary of U.S. Bank, acquired the servicing contracts.

During litigation in state court over money the NMI LPs owed under the leases, DVI Funding and five DVI Receivables entities filed involuntary bankruptcy petitions against Rosenberg, NMI, and NMI Holding in the United States Bankruptcy Court for the Eastern District of

4

Pennsylvania. Rosenberg transferred his case to the Southern District of Florida, where the Bankruptcy Court there dismissed the involuntary petition because, among other things, DVI Funding and the DVI Receivables were not Rosenberg's creditors. *In re Rosenberg*, 414 B.R. 826, 840–41 (Bankr. S.D. Fla. 2009), *aff'd*, 472 Fed. App'x 890 (11th Cir. 2012) (per curiam). The petitions against NMI and NMI Holding remained in the Eastern District of Pennsylvania, where its Bankruptcy Court gave collateral estoppel effect to the Florida decision and dismissed the petitions. *In re Nat'l Med. Imaging, LLC*, 439 B.R. 837, 854 (Bankr. E.D. Pa. 2009), *aff'd*, __ Fed. App'x __, No. 15-1996, 2016 WL 1743475 (3d Cir. 2016).

Rosenberg then filed in the Southern District of Florida Bankruptcy Court an adversary action under 11 U.S.C. § 303(i) against DVI Funding, the DVI Receivables entities, Lyon, and U.S. Bank. He sought to recover costs, attorney's fees, and damages for the bad faith filing of the involuntary bankruptcy petition. The Court awarded Rosenberg fees and costs after a bench trial, *In re Rosenberg*, No. 09-13196, 2012 WL 3990725 (Bankr. S.D. Fla. Sept. 11, 2012), *aff'd in part*, 779 F.3d 1254 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 805 (2016), and transferred the claim for damages to the District Court for a jury trial. After trial, the jury awarded Rosenberg $1.1 million in compensatory damages and $5 million in punitive damages. The District Court initially overturned the punitive damages award in its entirety and limited compensatory damages to $360,000, but the Eleventh Circuit held that U.S. Bank's post-trial motion was untimely and reinstated the jury's verdict. *Rosenberg v. DVI Receivables, XIV, LLC*, No. 12-22275, 2014 WL 4810348 (S.D. Fla. Sept. 29, 2014), *rev'd in part*, 818 F.3d 1283 (11th Cir. 2016).

5

With the stage set, we turn to the litigation currently on appeal. In August 2013, Sara Rosenberg (Maury's wife), the Rosenberg Trust, and several NMI Real Estate Partnerships (together with Mrs. Rosenberg and the Rosenberg Trust, the "Rosenberg Affiliates") brought suit to recover damages stemming from the involuntary bankruptcy petitions filed against Maury Rosenberg, NMI, and NMI Holding. All of the plaintiffs are affiliated with Maury Rosenberg, but none of them were parties to the involuntary bankruptcies.

The complaint stated a single claim of tortious interference with contracts and business relationships. The NMI Real Estate Partnerships owned the medical imaging facilities subject to mortgages with various lenders. The Rosenberg Affiliates alleged that the DVI Receivables entities, DVI Funding, Lyon Financial, Jane Fox (an agent for Lyon who signed the involuntary bankruptcy petitions), and U.S. Bank (collectively, the "Defendants"), orchestrated the filing of the involuntary bankruptcy petitions with the intent to cause the NMI Real Estate Partnerships to default on their underlying mortgages. As a result, the Partnerships were declared in default, all but one of the properties have been lost, and Sara Rosenberg lost her interest in one of the Partnerships. The Rosenberg Affiliates also alleged that the Rosenberg Trust suffered losses on investments in the Partnerships and life insurance for Maury Rosenberg.

The case was initially filed in the District Court for the Southern District of Florida, but it transferred the case to the Eastern District of Pennsylvania on the motion of the Defendants. They then moved to dismiss, arguing that the Rosenberg Affiliates' state law tortious interference claim was preempted by the involuntary bankruptcy provisions of the Bankruptcy Code. The District Court agreed and dismissed the complaint. *Rosenberg v. DVI Receivables, XIV,*

6

*LLC*, No. 14-5608, 2015 WL 3513445 (E.D. Pa. June 4, 2015). This appeal followed.

## II.

The District Court exercised diversity jurisdiction under 28 U.S.C. § 1332(a), and we have appellate jurisdiction to review its order dismissing the complaint under 28 U.S.C. § 1291. Our review of the District Court's grant of a motion to dismiss based on preemption is plenary. *New Jersey Carpenters v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). We accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *Id.*

## III.

Section 303 of the Bankruptcy Code governs involuntary bankruptcy cases. In an involuntary bankruptcy case it is the creditors, not the debtors, who start the proceedings by filing an involuntary petition under either Chapter 7 or 11 of the Code. 11 U.S.C. § 303(b). Important for our purposes is that § 303(i) provides that if an involuntary bankruptcy petition is dismissed, the debtor may recover attorney's fees, costs, and even damages from the creditors. It reads:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>> (1) against the petitioners and in favor of the debtor for—

(A) costs; or
(B) a reasonable attorney's fee; or
(2) against any petitioner that filed the petition in bad faith, for—
(A) any damages proximately caused by such filing; or
(B) punitive damages

*Id*. § 303(i).

As they were not debtors, the Rosenberg Affiliates cannot recover damages from the Defendants under § 303(i). *See, e.g.*, *In re Miles*, 430 F.3d 1083, 1093–94 (9th Cir. 2005); *In re Mike Hammer Prods., Inc.*, 294 B.R. 752, 755 (B.A.P. 9th Cir. 2003); *In re VII Holdings Co.*, 362 B.R. 663, 668 (Bankr. D. Del. 2007) (Shannon, J.); *Collier on Bankruptcy* ¶ 303.33 (16th ed.). Shut off from a remedy under the Bankruptcy Code, the Rosenberg Affiliates are instead pursuing a state law tortious interference claim for damages caused by the involuntary bankruptcy petitions filed against Maury Rosenberg, NMI, and NMI Holding. The question for us is whether § 303(i) preempts this state law claim.

Federal preemption of state law is a "necessary but precarious component of our system of federalism under which the states and the federal government possess concurrent sovereignty." *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 687 (3d Cir. 2016). Under this dual system, federal and state law coexist peacefully much of the time. But when those laws come into conflict, the Supremacy Clause of the Constitution requires that state law give way to federal law. U.S. Const. art. VI, cl. 2.

Federal preemption of state law comes in three forms: express preemption, conflict preemption, and field

8

preemption. *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 126 (3d Cir. 2010). Ours is a case of alleged field preemption. It "occurs when a field is 'reserved for federal regulation, leaving no room for state regulation,' and 'congressional intent to supersede state laws [is] clear and manifest.'" *Id.* (quoting *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 336 (3d Cir. 2009)).

In deciding whether Congress has occupied a field for exclusive federal regulation, we begin, based on concerns of federalism, with a sturdy "presumption against preemption." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "This 'strong presumption against inferring Congressional preemption' also applies 'in the bankruptcy context.'" *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 365 (3d Cir. 2012) (quoting *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 493 (3d Cir. 1997)). It is overcome when "a Congressional purpose to preempt . . . is clear and manifest." *Id.* (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 117 (3d Cir. 2010), *cert. denied*, 132 S. Ct. 365 (2011)). To discern the preemptive intent of Congress, we look to the text, structure, and purpose of the statute and the surrounding statutory framework. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).

The inquiry we make is whether there is enough evidence in the text, structure, or purpose of § 303(i) or the Bankruptcy Code as a whole to rebut the presumption against preemption and say that it was Congress's "clear and manifest intent" to preempt state law causes of action for non-debtors based on the filing of an involuntary bankruptcy petition.[1] We conclude that the evidence is insufficient for field preemption.

[1] We express no opinion on whether similar state law claims brought by debtors would be subject to preemption.

Starting with text, § 303(i) provides a remedy to the debtor, but is silent as to potential remedies for non-debtors harmed by an involuntary bankruptcy petition. This suggests that when Congress passed the provision it either did not intend to disturb the existing framework of state law remedies for non-debtors or (more likely) was not thinking about non-debtor remedies at all. In either case, field preemption does not apply. The Defendants ask us to infer that, by providing a remedy to debtors, Congress also meant to deprive non-debtors of any remedy.[2] However, we do not lightly infer from congressional silence the intent to deprive some persons of a judicial remedy for an abuse of the bankruptcy system. As the Supreme Court observed in a preemption case concerning the Atomic Energy Act, "[i]t is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984).

Turning to structure and purpose, we see no indication of field preemption. By giving creditors the ability to bring a debtor into bankruptcy, Congress created a power that could be abused. Given the risks of involuntary petitions, it included a remedy for debtors to discourage abuse. *In re Diloreto*, 388 B.R. 637, 655 (Bankr. E.D. Pa. 2008), *aff'd*, 442 B.R. 373 (E.D. Pa. 2010) ("Involuntary petitions, even ones filed in good faith, can have a significant negative effect

---

[2] The Defendants also suggested at oral argument that non-debtors have some remedy under § 303, namely asking the Bankruptcy Court to appoint a trustee to "take possession of the property of the estate and to operate any business of the debtor." 11 U.S.C. § 303(g). But we do not see how the post-petition appointment of a trustee would address the type of economic losses the Rosenberg Affiliates alleged in their complaint.

upon the interests of a putative debtor . . . . Section 303(i) was intended to ameliorate those negative effects by imposing liability upon the unsuccessful petitioning creditor . . . .").

Nothing in the Code suggests that Congress was also concerned about protecting non-debtors from the effects of involuntary petitions.[3] That said, it would be inconsistent with the remedial purpose of § 303(i) to preempt state law remedies for non-debtors that can likewise be harmed by involuntary bankruptcy petitions. *See In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591, 605 (Bankr. E.D. Mich. 2003) ("[T]he harm from an improper involuntary bankruptcy petition can result not only to the debtor but also to the debtor's owners, employees, suppliers, customers and other creditors.").

The Defendants point out that, in the automatic stay provisions of the Code, Congress provided that any individual "injured by any willful violation" of the automatic stay "shall recover actual damages." 11 U.S.C. § 362(k)(1). They argue this suggests that Congress knew how to provide broad remedies that covered non-debtors and declined to do so with § 303(i). No doubt this reading is plausible. But field preemption requires congressional intent that is clear and manifest, and this is lacking when Congress is silent on what courts are to do with state law remedies for non-debtors.

---

[3] If we were inclined to also look at legislative history for clues as to Congress's thoughts on this subject, we would still come out empty-handed. Section 303(i) was enacted as part of the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, and the House and Senate Reports discussing involuntary bankruptcies say nothing about non-debtors, non-debtor remedies, or preemption.

The Defendants also argue that permitting state law claims against creditors would be inconsistent with the comprehensive nature of the Bankruptcy Code, the exclusive nature of federal court jurisdiction over bankruptcies, and the uniform nature of bankruptcy law. They stoke fears of a flood of state court litigation challenging the actions of creditors that would chill the use of involuntary bankruptcy proceedings and permit state courts to rewrite bankruptcy law. Yet there is no evidence in the text, structure, or purpose of the Code that Congress was concerned with this outcome. Moreover, the fears of the Defendants are based more on conjecture than fact. They cite only a handful of state court cases where non-debtors brought state tort claims against petitioning creditors. *E.g.*, *PNH, Inc. v. Alfa Laval, Inc.*, 940 N.E.2d 577, 580 (Ohio Ct. App. 2010) (purchasers of corporation's debt brought tortious interference, abuse of process, and defamation claims against creditors who filed involuntary petition against corporation). In these circumstances, we are not convinced by a floodgates argument to support a finding of field preemption.

As for concerns that permitting state law claims will undermine uniformity in bankruptcy law, we rejected a very similar argument in *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002). That case addressed whether the Federal Rules of Civil Procedure preempt state law tort claims based on misconduct in federal litigation. We held they did not but observed there were "legitimate public policy concerns in concluding that the federal rules foreclose state claims in the nature of abuse of process arising out of federal litigation." *Id.* at 394. Even though there would be conflicts between the federal rules and state law and "federal preemption would forestall such controversies," we were content to "rely on the traditional comity between the two systems to deal adequately and innovatively with such common problems." *Id.* We rely on that same comity today

12

and trust that state courts faithfully will account for federal bankruptcy law to the extent it may be relevant to a state law claim against a creditor.

Finally, the Defendants urge us to follow the Ninth Circuit's decision of *In re Miles*, 430 F.3d at 1083, a decision the District Court found persuasive when it dismissed the Rosenberg Affiliates' complaint. Non-debtors there were allegedly harmed by an involuntary bankruptcy and brought state law tort claims against the petitioning creditors in state court. *Id.* at 1086–87. The creditors removed the case to federal court and the Ninth Circuit held that the state law tort claims were removable because they were "completely preempted" by § 303(i). *Id.* at 1093 n.6.[4] This was so

---

[4] Complete preemption is not the same as field preemption, and the two concepts should not be confused. Complete preemption "operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). It applies when the preemptive force of a federal statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Our case deals with field preemption, a species of "ordinary preemption" that operates as a federal defense to a state law claim, and has nothing to do with subject matter jurisdiction. For this reason, *Miles* could be deemed distinguishable. But we recognize that finding complete preemption in the context § 303(i) would also support finding field preemption in our case.

13

because "Congress intended 11 U.S.C. § 303(i) to provide the exclusive basis for awarding damages predicated upon the filing of an involuntary bankruptcy petition." *Id.* at 1089. Once convinced that the case was properly removed, the Court dismissed the complaint because the non-debtors lacked standing under § 303(i) to recover damages. *Id.* at 1093.

We do not find *Miles* persuasive on the preemption issue.[5] To start, its analysis of § 303(i) is inconsistent with our decision in *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 52 (3d Cir. 1988), where we held that § 303(i) is not an exclusive remedy for debtors who convert an involuntary Chapter 7 bankruptcy petition to a voluntary Chapter 11 reorganization. *U.S. Express Lines Ltd.*, 281 F.3d at 393 n.5 (noting that *Miles* is in tension with *Paradise Hotel*). We also think the analysis is inconsistent with the presumption against preemption, which, as we have discussed, requires that congressional intent to preempt state law must be clear and manifest. *In re Fed.-Mogul Glob. Inc.*,

---

We also note that if complete preemption were at issue in this case, we doubt it would apply. The Supreme Court has found complete preemption in three contexts: § 301 of the Labor Management Relations Act, § 502(a) of ERISA, and §§ 85 and 86 of the National Bank Act. *New Jersey Carpenters & the Trustees Thereof*, 760 F.3d at 302. It has never recognized complete preemption in the Bankruptcy Code, and it seems the Ninth Circuit stands alone in this regard. *See In re Repository Techs., Inc.*, 601 F.3d 710, 724 (7th Cir. 2010) (declining to follow *Miles*).

[5] As noted above, we do agree with the *Miles* Court that non-debtors lack standing under § 303(i) to recover damages and do not take issue with this portion of its opinion.

14

684 F.3d at 365.  Near the beginning of its analysis, the *Miles* Court admitted that the "Bankruptcy Code and its legislative history are silent on whether Congress intended 11 U.S.C. § 303(i) to provide the exclusive basis for awarding damages predicated upon the filing of an involuntary bankruptcy petition."  430 F.3d at 1089.  If we apply faithfully the presumption against preemption, silence on the part of Congress should be the end of the analysis.  But the Court went on to "infer from Congress's clear intent to provide damage awards only to the debtor . . . that Congress did not intend [non-debtors] to be able to circumvent this rule by pursuing those very claims in state court."  *Id.* at 1091.  Absent evidence that Congress actually meant for § 303(i) to be an exclusive remedy, we do not make the same inference.[6]

\*     \*     \*     \*     \*

---

[6] The Defendants argue in the alternative that we can affirm on the basis of the statute of limitations, an issue the District Court did not reach.  "It is an accepted tenet of appellate jurisdiction that we 'may affirm a judgment on any ground apparent from the record, even if the district court did not reach it.'"  *Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 761 (3d Cir. 2010) (quoting *Kabakjian v. United States,* 267 F.3d 208, 213 (3d Cir. 2001)).  We decline to affirm on that alternate ground in this case because it is unclear from the record when the Rosenberg Affiliates were injured and when their tortious interference claim accrued. We do not know from the complaint, for example, when the NMI Real Estate Partnerships defaulted on their mortgages or when the Rosenberg Trust suffered its losses.  Accordingly, we will leave the statute-of-limitations issue to the District Court on remand.

15

In this context, we hold that Bankruptcy Code § 303(i) does not preempt state law claims by non-debtors for damages based on the filing of an involuntary bankruptcy petition. Accordingly, we reverse the decision of the District Court and remand for further proceedings.