In re MAPLE–WHITWORTH,
INC., Alleged Debtor.

Michael N. Sofris, APC, Appellant.

v.

Maple–Whitworth, Inc.; United States Trustee; Roxanne Kamel; Larry Weinstock; Emanuel Perez; Mica Bintu–Brown, Appellees.

BAP No. CC–06–2096–KNB.
Bankruptcy No. LA 04–32868 AA.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on
March 21, 2007.

Filed Sept. 4, 2007.

Michael N. Sofris, Beverly Hills, CA, Pro se Appellant.

Leo Fasen, Fasen & Associates, Beverly Hills, CA, for Maple–Whitworth, Inc.

Before KLEIN, NIELSEN [1] and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The procedure to obtain attorney's fees and costs under 11 U.S.C. § 303(i) in a dismissed involuntary bankruptcy is in issue.

The question is whether one may seek such an award from fewer than all petitioners, the answer to which necessitates determining the nature of the liability. We conclude that § 303(i) liability is joint and several, that a debtor need not join all petitioners in a request for a § 303(i) award, and that, unless the court makes a specific apportionment, a petitioner is entitled seek contribution from other jointly and severally liable petitioners who were not joined in the debtor's motion. Hence,

---

[1]. George B. Nielsen, Jr., Bankruptcy Judge for the District of Arizona, sitting by designation.

we AFFIRM the award of $42,257 against fewer than all of the petitioning creditors.

## FACTS

The former involuntary alleged debtor, Maple–Whitworth, Inc., owns an apartment building in Beverly Hills, California, as to which two competing factions claimed corporate ownership and control: the Marlowe–Shlush Faction and the Mayman–Nathan Faction.

While the details, the skullduggery, and the dramatis personae are fascinating, all that matters for our purposes is that the involuntary bankruptcy case was an intermission in state-court litigation between the two factions over corporate control.

In the midst of that state-court litigation, appellant Sofris (Michael Sofris, APC, a professional law corporation owned by attorney Michael Sofris, which for convenience we refer to as an individual), who is aligned with the Mayman–Nathan Faction, joined by four individuals, filed an involuntary chapter 7 petition against Maple–Whitworth on October 28, 2004. Seven other petitioners holding small claims eventually, and in two phases, joined the petition pursuant to § 303(c).

The bankruptcy court recognized the Marlowe–Shlush Faction as being in control of the debtor corporation for purposes of the bankruptcy and dismissed the involuntary petition on October 11, 2005, making it explicit that the final determination of corporate ownership and control eventually would be made in the on-going litigation in state court.

After dismissal, the Marlowe–Shlush Faction moved on behalf of Maple–Whit-worth for an award of costs and fees of $42,257, and punitive damages of $100,000 against appellant Sofris but, viewing Sofris as a ringleader who should bear primary responsibility, did not name the other eleven petitioners in the motion.

Sofris objected that the motion was procedurally and substantively defective. Without asserting any claims for contribution, he contended that the phrase "the petitioners" in § 303(i) requires *all* petitioners to be served before the court can consider an award and that a court cannot pick and choose among petitioning creditors when making an award.

In addition, based on a release executed on the corporation's behalf by a member of the Mayman–Nathan Faction, Sofris contended that Maple–Whitworth had waived its § 303(i) rights.

After continuing the initial hearing to permit service on all petitioners, the court awarded the requested $42,257 in fees and costs but, ruling that the petition was not filed in bad faith, rejected § 303(i)(2) damages. The court noted that the release executed by the Mayman–Nathan Faction would be effective if that faction later prevailed in the state-court litigation but did not at that time make further detailed findings regarding why it had previously recognized the Marlowe–Shlush Faction.[2] Thus, in an order entered February 27, 2006, with accompanying findings that described the liability as "joint and several," the court awarded $42,257 against all of the petitioners who were served with the motion, without naming them. Sofris timely appealed.

On reconsideration, the court twice amended the order. The first amendment

---

**2.** The state court later ruled in favor of the Marlowe–Shlush Faction. Judgment After Bench Trial, *Mayman v. Marlowe,* No. BC310024 (Super. Ct., Los Angeles County, July 31, 2006). Sofris objected to inclusion of the judgment in Appellee's Appendix but does not contest its authenticity. As the state court's public docket reflects entry of the judgment, we take judicial notice.

named the ten of the twelve petitioners against whom the award was made. The second amendment deleted five of those ten petitioners because notice to them was defective. In the end, the $42,257 order was against only the five initial petitioners, each of whom was listed by name.

Neither of the amended orders was appealed.

## ISSUES

1. Whether it was error to consider a § 303(i)(1) award without *all* petitioners having been named and served.

2. Whether it was error to award fees and costs under § 303(i)(1) against fewer than all the petitioners.

3. Whether the amount awarded under § 303(i) was correct.

## STANDARDS OF REVIEW

■ ▪ We review statutory construction questions de novo. *Duffy v. Dwyer,* 303 B.R. 437, 439 (9th Cir. BAP 2003), *aff'd,* 426 F.3d 1041 (9th Cir.2005). Fee and cost awards under § 303(i) are reviewed for abuse of discretion. *Higgins v. Vortex Fishing Sys., Inc.,* 379 F.3d 701, 705 (9th Cir.2004) (*"Vortex Fishing II"*).

## JURISDICTION

Federal subject-matter jurisdiction was premised on 28 U.S.C. § 1334(a) in this core proceeding under § 157(b). We have jurisdiction over this final order. 28 U.S.C. §§ 158(a) & (c).

**3.** The precise language of § 303(i), which has not been amended since 1986, is:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

## DISCUSSION

The substantive nature of the liability of petitioning creditors affects the procedure for obtaining fee and cost awards under § 303(i) in dismissed involuntary cases. Sofris agrees that the liability is joint and several and so argued to the bankruptcy court. This comports with the statute, as we further explain before turning to the procedural implications of joint and several liability and the merits of the amount of the award.

### I

Section 303(i) does not specify the nature of the award it authorizes to be made against petitioners when an involuntary petition is dismissed other than on consent of all petitioners and the debtor if the debtor has not waived the right to recovery.

Sofris argues that the term "the petitioners" in § 303(i)(1) means that a fee and cost award *must be* joint and several and may only be made against *all* petitioning creditors.

### A

■ As all statutory analysis begins with the language of the statute, we look to § 303(i) and note that, where there is a dismissal without the debtor having waived compensation, the court "may" award attorney's fees and costs against "the petitioners" and, as against any petitioner that filed the petition in bad faith, may also award "damages proximately caused by such filing" and "punitive damages." 11 U.S.C. § 303(i).[3]

(1) against the petitioners and in favor of the debtor for—
 (A) costs; or
 (B) a reasonable attorney's fee; or
(2) against any petitioner that filed the petition in bad faith, for—
 (A) any damages proximately caused by such filing; or

This creates a compensation scheme that, in the precise words of the statute, provides for awards of an "attorney's fee," "costs," "damages proximately caused," and "punitive damages." Fees and costs "may" be awarded against "the petitioners."

■ The Supreme Court requires that statutes "be read as a whole," especially when dealing with adjacent subparagraphs that were constructed together. *United States v. Atl. Research Corp.,* — U.S. —, —, 127 S.Ct. 2331, 2336, 168 L.Ed.2d 28 (2007) ("*Atl.Research*"); *King v. St. Vincent's Hospital,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). The § 303(i) scheme, then, is construed as an integrated whole in which each of its facets is assessed in the context of the remaining facets. *Atl. Research,* 127 S.Ct. at 2336; *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.),* 370 B.R. 236, 252 (9th Cir. BAP 2007). Hence, § 303(i)(2) informs analysis of the meaning of § 303(i)(1).

The *Atlantic Research* rule is consistent with Supreme Court precedent that the construction of the Bankruptcy Code is a "holistic endeavor" in which "a provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46:5 (5th ed.1992) ("a subsection may not be considered in a vacuum").

### B

■ Three glosses from case law further inform our analysis of § 303(i). First,

the verb "may" ("the court may grant judgment") connotes the existence of discretion in the court's decision whether to make an award based on the "totality of the circumstances." *Vortex Fishing II,* 379 F.3d at 706–07; *accord, Susman v. Schmid (In re Reid),* 854 F.2d 156, 159 (7th Cir.1988).

■ Second, in exercising this discretion, the court begins with a rebuttable presumption that reasonable fees and costs are authorized. *Vortex Fishing II,* 379 F.3d at 707. In other words, any petitioning creditor in an involuntary case "should expect to pay the debtor's attorney's fees and costs if the petition is dismissed." *Id.,* 379 F.3d at 707 (quoting *In re Kidwell,* 158 B.R. 203, 217 (Bankr.E.D.Cal.1993)).

■ Third, § 303(i), as a comprehensive compensation scheme, preempts state-law causes of action (e.g., malicious prosecution) and provides an exclusive federal source of recompense predicated upon the filing of an involuntary bankruptcy petition. *Miles v. Okun (In re Miles),* 430 F.3d 1083, 1091 (9th Cir.2005).

### C

Although Congress did not detail how to apply the multiple liability feature of the § 303(i) scheme, its decision to couch the remedies in terms of tort concepts of "damages proximately caused" and "punitive damages" is significant for purposes of divining the nature of the liability.

### 1

■ In addition to award of an "attorney's fee" and "costs" against "the petitioners," Congress authorized award of "damages proximately caused" and "puni-

---

(B) punitive damages.

11 U.S.C. § 303(i). In 1986, a damages provision ("(C) any damages proximately caused by the taking of possession of the

debtor's property by a trustee ...") was deleted from § 303(i)(1). Pub.L. 99–554, § 204, 100 Stat. 3088, 3097 (Oct. 27, 1986).

tive damages" as to any petitioner filing in bad faith. 11 U.S.C. § 303(i). As noted, we view the scheme as an integrated whole and do not consider the terms in § 303(i)(1) in isolation from § 303(i)(2).

Proximate causation and punitive damages are both familiar concepts in the common law of tort. Since Congress based its scheme of remedies on these general tort concepts, it follows that Congress expected the remedies to be applied under the same common-law principles that apply when more than one person is liable for the same harm. *See Atl. Research,* 127 S.Ct. at 2339.

a

The idea that multiple parties may be liable for the same harm arises often in tort situations, and it is in tort that the basic doctrine regarding multiple liability has been forged. Tort doctrine is particularly apt because it is modulated by consideration of the effect of the precise conduct of different actors who have varying degrees of involvement in, and responsibility for, the operative facts.

■ The traditional tort solution is joint and several liability. Here, the bankruptcy court held, without analysis, that the § 303(i)(1) liability of the petitioners is joint and several. As noted above, Sofris agrees that § 303(i)(1) liability is joint and several, does not contend that he is only severally liable, and does not contend that initial apportionment is mandatory.

Courts that have touched on the question likewise agree that, at the first level of analysis, the basic § 303(i)(1) liability is joint and several. *In re Johnston Hawks Ltd.,* 72 B.R. 361, 366–68 (Bankr.D.Hawai'i 1987), *aff'd,* (D.Haw.1988), *aff'd mem.,* 885 F.2d 875 (9th Cir.1989). Likewise, we

have, by implication, treated such awards as joint and several. *Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.),* 61 B.R. 614, 621–22 (9th Cir. BAP 1986).

■ Since this appeal presents only a question of joint and several liability in circumstances in which the court made an award against fewer than all petitioners and did not purport to apportion the award, we deal only with the consequences of joint and several liability in that setting.[4] Thus, we treat § 303(i) liability as presumptively joint and several at each of its two tiers, *i.e.,* joint and several among § 303(i)(1) awards and joint and several among § 303(i)(2) awards.

b

Under the settled doctrines of joint and several liability and contribution, we reject Sofris' argument that he cannot be responsible for more than his pro rata share of liability and that all potentially liable parties must be joined.

Since we are dealing with federal law, we begin by confirming that the standard rule regarding torts over which federal law has cognizance—the Federal Employers' Liability Act ("FELA") and admiralty—is one of joint and several liability. *Norfolk & W. Ry. Co. v. Ayers,* 538 U.S. 135, 162–64, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003) ("*Ayers* ").

As a statement of the nature of the federal common law of joint and several liability in the tort context, we look to the *Restatements,* principally the *Restatement (Second) of Torts* and, to the extent relevant, the *Restatement (Third) of Torts. See Atl. Research,* 127 S.Ct. at 2339.

**4.** Although Sofris did not appeal the amended orders that resulted in an award being made against only five of the twelve petitioners, the original order was against fewer than all petitioners. As that has not changed, this appeal is not moot.

As hammered out in the tort arena, joint and several liability and its correlative doctrine of contribution permit adjustments for the purpose of taking into account the equities of a particular situation. There are two distinct concepts: who is liable; and who actually pays.

 The basic rule of joint and several liability is that each such person is responsible for the entire award and, unlike several liability,[5] bears the risk of uncollectability from co-obligors. RESTATEMENT (THIRD) OF TORTS § 10.[6] Moreover, one may sue and collect from "any" of the jointly liable persons, leaving adjustments to the doctrine of contribution. *Id.*[7] In other words, the risk of uncollectability among co-obligors is on the jointly liable persons rather than the plaintiff, who bears the risk only of total uncollectability.

 In short, every jointly and severally liable person is presumed to be liable for the full amount even though there is no requirement that all potentially liable entities be joined as parties in a joint and several liability situation. Judgment can be obtained against one, or any number, of the jointly-liable parties for the full amount, and can be collected in full from any one of them, it being understood that there cannot be more than one satisfaction of the total award.[8]

5. The *Restatement (Third)* provides:
 § 11. *Effect of Several Liability.* When, under applicable law, a person is severally liable to an injured person for an indivisible injury, the injured person may recover only the severally liable person's comparative-responsibility share of the injured person's damages.
 RESTATEMENT (THIRD) OF TORTS § 11.
 Historically, several liability was employed where a harm was divisible, but eventually came to be applied to include comparative liability for an indivisible injury. It has the effect of placing the risk of insolvency or uncollectability on claimants because recovery is limited and contribution is not available. *Id.* § 11 comments *a—b* & Reporter's Note.

6. The *Restatement (Third)* provides:
 § 10. *Effect of Joint and Several Liability.* When, under applicable law, some persons are jointly and severally liable to an injured person, the injured person may sue for and recover the full amount of recoverable damages from any jointly and severally liable person.
 RESTATEMENT (THIRD) OF TORTS § 10.
 The description in the *Restatement (Second)* was:
 § 878. *Persons Subject to a Common Duty.* If two or more persons are under a common duty and failure to perform it amounts to tortious conduct, each is subject to liability for the entire harm resulting from failure to perform the duty.
 RESTATEMENT (SECOND) OF TORTS § 878.

7. The *Restatement (Second)* used the phrase "one, some, or all" to describe which parties to sue:
 § 882. *Joinder of Parties.* If each of two or more persons is subject to liability for the full amount of damages allowed for a single harm resulting from their tortious conduct, the injured person can properly maintain a single action against one, some or all of them.
 RESTATEMENT (SECOND) OF TORTS § 882.
 The *Restatement (Third)*, in describing the so-called "A Track" (pure joint and several liability) for §§ 18–21 regarding methods of apportionment explains the traditional rationale:
 Joint and several liability has two important consequences. First, a plaintiff may sue and recover all damages from any defendant found liable. This puts the burden of joining and asserting a contribution claim against other potentially responsible persons on the defendant. Second, the risk that one or more legally responsible parties will be insolvent or otherwise unavailable to pay for the plaintiff's injury is placed on each jointly and severally liable defendant— the plaintiff does not bear this risk.
 RESTATEMENT (THIRD) OF TORTS § A18 comment a.

8. The *Restatement (Second)* commentary to § 879 puts it thus:
 In situations in which all of the tortfeasors are liable for the entire harm, the injured

#### c

Applying these rules to joint liability under § 303(i), there is no merit to Sofris' contention that *all* petitioners must be made party to a motion for a § 303(i) award. Such a position runs counter to fundamental rules regarding joint and several liability that permit suing fewer than all the obligors. *Ayers*, 538 U.S. at 163, 123 S.Ct. 1210 ("Nothing is more clear than the right of a plaintiff, having suffered ... a loss, to sue in a common-law action all the wrongdoers, or any one of them, at his election;") (quoting *The "Atlas"*, 93 U.S. 302, 315, 23 L.Ed. 863 (1876) (ellipsis in original)). While the bankruptcy court had discretion to decline to proceed without joinder of all petitioners, it was not required to do so and was entitled to proceed without such joinder.

In context, the provision in § 303(i) that "the court may grant judgment against the petitioners" is merely a permissive designation of the universe of persons who may be liable. If suing all jointly-liable parties is not required in tort, there is no reason to think that § 303(i) is any different.

In short, it was permissible for the motion for a § 303(i) award to have been directed solely against Sofris. Moreover, even if it had been directed against all petitioners, the entire $42,257 award could be collected from Sofris.

#### 2

The potential harshness of permitting collection of all of a joint and several liability debt from only one of the obligors is ameliorated by the contribution and indemnity doctrines.

#### a

Contribution is an equitable remedy that protects the jointly-liable party who pays an inequitably disproportionate share of the liability by requiring others who are also liable to reimburse the party who paid. It is founded on principles of equity, assists in fair and just division of losses, and prevents unfairness and injustice. 18 Am.Jur.2d *Contribution* § 1 (1985); Restatement of Restitution § 81 (1937); *accord, Atl. Research*, 127 S.Ct. at 2339.

Contribution is also an independent right that is contingent and does not become enforceable until the one seeking contribution has paid a disproportionate share of the liability. *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 295 (9th Cir.1996)

(citing 18 Am.Jur.2d *Contribution* § 11, *and* Restatement (Second) of Torts § 886A(2), *and* Restatement of Restitution § 82(1)).

In addition, contribution is a personal right that may be assigned. Even though the common liability is joint, the liability of each joint obligor to contribute a proportionate share is several. 18 Am.Jur.2d *Contribution* §§ 3 & 11.

As an equitable remedy, contribution is governed by equitable principles and is not apodictic. Rather, it may be

---

person is entitled to maintain an action against one or any number of the tortfeasors and to obtain judgment against any one or any number for the full amount of the harm, although no more than one satisfaction can be obtained for the harm. Restatement (Second) of Torts § 879 comment *b* (cross-references omitted).

This comment retains validity under "Track A" (pure joint and several liability) of the *Restatement (Third):*
While this Section [§ A18] supersedes § 879 of the Restatement Second, Torts, it effects no change in the rule stated therein. Restatement (Third) of Torts § A18 comment *a*.

applied only in a manner that comports with equity and notions of fairness.[9]

The underlying premise is that the person entitled to payment (be it a debtor under § 303(i) or a tort victim) does not bear the credit risk of not being able to collect against any particular joint obligor (an unsuccessful petitioner under § 303(i) or a tortfeasor). Thus, the full amount of a judgment can be collected against any one joint obligor, who then can then equilibrate the loss among the other joint obligors by using the muscle of contribution.

■ Two threshold rules are that there is no right of contribution until one has paid more than one's equitable share of a common liability and that contribution cannot exceed the amount paid by that party in excess of that party's equitable share. Although the entire judgment may be collected from one obligor, no co-obligor can be required to make a contribution in excess of his own equitable share of the liability. *Atl. Research,* 127 S.Ct. at 2339 (quoting RESTATEMENT (SECOND) OF TORTS, § 886A(2)); *Compare* RESTATEMENT (THIRD) OF TORTS § 23(a)-(b), *with* RESTATEMENT (SECOND) OF TORTS § 886A(2).[10]

■ Determining what constitutes the equitable share is not always easy. While the maxim that "equality is equity" provides the presumptive starting point, adjustments are permitted. Problems arise when a joint obligor is insolvent or beyond the jurisdiction of the court. The classic solution has been to divide the loss only among the solvent joint obligors against whom contribution awards may be expected to be effective. Thus, when there are three joint obligors, one of whom is insol-

---

9. The equitable nature of the remedy is explained in the commentary to the *Restatement (Second) of Torts:*

> c. *Equitable nature of contribution.* Contribution is a remedy that developed in equity and there is a considerable body of case law dealing with the equity rules governing it, for example in the cases of contribution between joint contract debtors. The rule stated in Subsection (1) is intended to take over and apply these rules of equity so far as they are pertinent. The "right of contribution" stated is not intended to be an absolute right in all cases; and in any case in which contribution would be inequitable it is still intended that a court will deny it. Likewise, when there are three tortfeasors and one of them is clearly insolvent or is beyond the jurisdiction, the amount of contribution fairly allowable between the other two may reasonably be affected and the court may be expected to do what is fair and equitable under the circumstances.

RESTATEMENT (SECOND) OF TORTS § 886A, comment *c*. The equitable underpinnings of contribution in joint and several liability situations has become obscured in the *Restatement (Third) of Torts* by the emphasis on the now-dominant comparative liability regimes.

10. The provisions from the second and third *Restatements* can profitably be compared.

The version before there was an attempt to accommodate comparative liability regimes was:

> (2) The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share. No tortfeasor can be required to make contribution beyond his own equitable share of the liability.

RESTATEMENT (SECOND) OF TORTS § 886A(2).

The version that reflects comparative liability regimes and also subsumes pure joint and several liability regimes is:

> (a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another by settlement or discharge of judgment, the person discharging the liability is entitled to recover contribution from the other, unless the other previously had a valid settlement and release from the plaintiff.
>
> (b) A person entitled to recover contribution may recover no more than the amount paid to the plaintiff in excess of the person's comparative share of responsibility.

RESTATEMENT (THIRD) OF TORTS § 23(a)-(b).

vent or beyond the jurisdiction, "the amount of contribution fairly allowable between the other two may reasonably be affected and the court may be expected to do what is fair and equitable under the circumstances." RESTATEMENT (SECOND) OF TORTS § 886A comment *c; accord,* RESTATEMENT (THIRD) OF TORTS § 23 comment *g.*

 Unequal allocations that reflect comparative degrees of culpability are also permitted. Under the traditional view, unequal apportionment is permitted to avoid inequity, which entails a finding that equal allocation would be inequitable; the modern trend toward comparative fault does not require a focus on whether equal division would be inequitable. *Compare* RESTATEMENT (SECOND) OF TORTS § 886A comment *c, with* RESTATEMENT (THIRD) OF TORTS § 23(b) comments *e & g; cf. United States v. Reliable Transfer Co.,* 421 U.S. 397, 410–11, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) (adopting comparative negligence in admiralty).[11] Thus, in either a traditional joint and several liability regime or a modern comparative liability regime, the court

has authority to make adjustments based on the circumstances in order to assure that contribution does not work an injustice.

Since in this appeal we are merely noting the general availability of contribution, we are not presented with any issue of whether there should be an unequal allocation in this instance or which method (traditional or comparative responsibility[12]) should be employed if unequal allocation is later determined to be appropriate. Those are questions better left to the future.

b

 The indemnity doctrine applies in § 303(i) situations when a petitioning creditor has been promised, typically as an inducement to sign the petition, that all expense or liability of the involuntary petition will be borne by another person. Such promises are enforceable. *Oakview Treatment Ctrs. of Kansas, Inc. v. Garrett,* 53 F.Supp.2d 1184, 1191–92 (D.Kan.1999) (indemnity on § 303(i) liability); RESTATEMENT (THIRD) OF TORTS § 22.[13]

11. These authorities reflect on-going developments in allocating liability among multiple persons. In 1999, the American Law Institute adopted the *Restatement (Third) of Torts: Apportionment of Liability* to address various facets of the problem. Our focus is on Topic 2 ("Liability of Multiple Tortfeasors for Indivisible Harm") and Topic 3 ("Contribution and Indemnity"). RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY §§ 10–E21. By 1999, only 15 states retained pure joint and several liability in tort. *Id.* § A18 comment *a.* Although the Supreme Court adopted comparative liability for admiralty actions in *Reliable Transfer,* it has ruled that the language of the FELA was too specific to warrant departure from a settled regime of joint and several liability, with contribution rights, in FELA actions. *Ayers,* 538 U.S. at 161–65, 123 S.Ct. 1210.

12. While there are cogent decisions that allocate § 303(i) awards unequally at the time of making the awards, their underlying theory of

allocation is ambiguous because their facts appear to support both traditional "avoiding inequity" analysis in which the court is announcing how it would allocate contribution claims to avoid inequity and modern comparative contribution analysis in which allocation may freely be made. *In re Val W. Poterek & Sons, Inc.,* 169 B.R. 896, 905–06 (Bankr. N.D.Ill.1994) (zero percent of award allocated to relatively innocent petitioner); *In re Oakley Custom Homes, Inc.,* 168 B.R. 232, 242 (Bankr.D.Colo.1994) (apportioning § 303(i)(1) award unequally). It is settled as a matter of federal common law that it is permissible to make the contribution allocation at the time of making the initial award. *See Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 108–10, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974).

13. The indemnity provision is:

(a) When two or more persons are or may be liable for the same harm and one of

Since indemnity and contribution are mutually exclusive, one with a right of indemnity has no right of contribution against the indemnitor. RESTATEMENT (THIRD) OF TORTS § 23(c).[14]

There could be indemnity issues here if Sofris or someone else used promises of indemnity to induce the various individual creditors holding small claims who joined as petitioners in two phases after the petition was filed.

## II

The procedures to implement joint and several liability, contribution, and indemnity all oblige a defendant who is being singled out to take action. Sofris' contention that the debtor should, at the threshold, bear the risk of procedural difficulties in naming, locating, and serving all of the petitioners and that an award cannot be made against him unless the debtor does

so turns the theory of joint liability on its head.

## A

Procedures through which Sofris may protect himself from disproportionate liability are available both before and after a § 303(i) award is made.

### 1

■ First, Sofris could have made a motion within the contested matter to join the other petitioners as parties to the § 303(i) motion.[15] Federal Rule of Civil Procedure 21, which permits joinder of additional parties on motion of a party, applies in bankruptcy "contested matters." Fed.R.Civ.P. 21, *incorporated by* Fed. R. Bankr.P. 7021 & 9014.[16]

■ Although Rule 21 permits the court to add parties on its own authority, the burden to make such a motion was on Sofris. That he elected to forego this pro-

---

them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, if:

(1) the indemnitor has agreed by contract to indemnify the indemnitee, or

(2) the indemnitee

(i) was not liable except vicariously for the tort of the indemnitor, or

(ii) was not liable except as a seller of a product supplied to the indemnitee by the indemnitor and the indemnitee was not independently culpable.

(b) A person who is otherwise entitled to recover indemnity pursuant to contract may do so even if the party against whom indemnity is sought would not be liable to the plaintiff.
RESTATEMENT (THIRD) OF TORTS § 22.

14. That provision is:
(c) A person who has a right of indemnity against another person under § 22 does not have a right of contribution against that person and is not subject to liability for contribution to that person.
RESTATEMENT (THIRD) OF TORTS § 23(c).

15. Although the award was made against Sofris and nine other petitioners, the motion was never amended or, even deemed amended, to include those other petitioners as parties. The award was amended to delete the five petitioners who later asked to be deleted from the $42,257 award because the notice to them did not indicate that they were parties to the motion. Four other petitioners appear to be similarly situated but did not appeal. We express no view about whether they still can obtain relief.

16. Rule 21 provides:

Misjoinder of parties is not ground for dismissal. *Parties may be dropped or added by order of the court on motion of any party* or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.
Fed.R.Civ.P. 21, *incorporated by* Fed. R. Bankr.P. 7021 & 9014 (emphasis supplied).

cedural opportunity should not be held against the debtor. Having sat on his rights, he is in no position to complain on appeal about his own litigation choice.

### 2

Sofris could also have commenced a third-party action against other petitioners to obtain judgments against them in the event that a judgment was rendered against him.[17] This could have been accomplished as of right by way of an adversary proceeding separate from the § 303(i) motion. Fed. R. Bankr.P. 7001. Or, if the court had been persuaded to exercise its authority under Rule 9014(b) to direct that Rule 7014 apply to the § 303(i) "contested matter" motion (which Sofris could have requested by motion), it could have been done under the third-party procedure of Civil Rule 14. *Compare* Fed. R. Bankr.P. 9014(b), *with id.* 7014, *incorporating* Fed. R.Civ.P. 14.

### 3

▮ Finally, if Sofris pays a disproportionate share of the $42,257, the independent equitable action in the bankruptcy court for contribution that we have described becomes available. This vestigal remnant of the old distinction between law and equity is still the traditional method of obtaining the equitable remedy of contribution. The action requires, as an essential element for relief, that the party requesting contribution has paid more than its equitable share of the judgment.

As a matter of federal common law, independent contribution actions continue to be available in FELA actions. *Ayers,* 538 U.S. at 162–63, 123 S.Ct. 1210. Similarly, contribution actions are permitted among joint tortfeasors who cause injury to longshoremen. *Cooper Stevedoring Co.,* 417 U.S. at 113, 94 S.Ct. 2174.

To the extent that the remedial scheme created by § 303(i) does not implicate "uniquely federal interests" of the kind that oblige court to formulate federal common law, the question is whether Congress expressly or by clear implication envisioned a contribution right to accompany the § 303(i) remedies or whether Congress intended that the court could supplement the remedies enacted. *Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 290–92, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993); *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 638–45, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).

As we have already explained, the choice by Congress to employ traditional tort remedies in the § 303(i) award scheme warrants the conclusion that Congress by clear implication either envisioned a contribution right to accompany § 303(i) remedies or intended that the courts could supplement the remedies with a right of contribution.

There are, to be sure, practical disadvantages to a separate action for contribution. In addition to the obvious inefficiencies of redundant litigation, if the joint and several obligors were not parties to the action in which the judgment was rendered, then that judgment's claim and issue preclusive effect on the unnamed parties may be clouded and could complicate subsequent contribution litigation by permitting them to litigate underlying liability. RESTATEMENT (SECOND) OF JUDGMENTS § 50.

Sofris could, however, have averted these inconveniences by taking direct action when confronted with the motion that

---

17. The order resolving a motion that is a "contested matter" under Rule 9014 has the status of a judgment under Civil Rule 58, even if it is denominated as an order. Fed. R. Bankr.P. 9021, *incorporating* Fed.R.Civ.P. 58.

was not directed at all petitioners. His earlier inaction now constrains his alternatives.

## B

This appeal illustrates the latitude a bankruptcy court has when dealing with multiple petitioners under § 303(i). In the end, a fee and cost award was made against only five of the twelve petitioners.

Such an award against fewer than all petitioners is consistent with other § 303(i) decisions. For example, a close examination of the facts in *Vortex Fishing* reflects that Ninth Circuit affirmed an award that was made against only some of the petitioners. *Compare Liberty Tool & Mfg., Inc. v. Vortex Fishing Sys. Inc. (In re Vortex Fishing Sys., Inc.),* 277 F.3d 1057, 1063 (9th Cir.2002) (more than four petitioners), *with Vortex Fishing II* (award against four petitioners); *cf. Val Poterek & Sons, Inc.,* 169 B.R. at 905–06 (zero percent allocation to one petitioner).

We conclude that it neither was error for the court to have made a § 303(i) award without joining all potentially liable petitioners, nor was it error for the award to have been against fewer than all petitioners.

## III

Sofris also challenges the merits of the award of attorney fees and costs as being unreasonable.

As noted, the amount of an award of an attorney's fee and costs under § 303(i)(1) is a matter of discretion to be assessed on the "totality of the circumstances" in a context in which the debtor has the burden to demonstrate that the amount requested is reasonable, subject to a rebuttable presumption in favor of entitlement to an award. *Vortex Fishing II,* 379 F.3d at 707.[18]

The "totality of circumstances" approach under § 303(i)(1) is different from the analysis of requests for compensation under 11 U.S.C. § 330 because the language of the two sections differs. All § 303(i)(1) requires is that the fee be "reasonable." In contrast, § 330 speaks of "reasonable compensation for actual, necessary services" subject to an elaborate set of statutory criteria. 11 U.S.C. §§ 330(a)(3)-(6). In effect, a § 303(i)(1) attorney's fee is an element of damages. *Wavelength, Inc.,* 61 B.R. at 622–22; *accord, Val Poterek & Sons, Inc.,* 169 B.R. at 907; *In re Better Care, Ltd.,* 97 B.R. 405, 413 (Bankr.N.D.Ill. 1989); 2 COLLIER ON BANKRUPTCY ¶ 303.15[4] (Henry J. Sommer & Alan N. Resnick eds. 15th ed. rev.2006).

The debtor's evidence in support of the amount requested demonstrated attorney fees of $40,250 based on records of 161 hours billed at a rate of $250 per hour, $2,007 in documented costs, and the declaration of counsel. The court was persuaded that the debtor had carried its burden to demonstrate, over Sofris' objection in which he presented no counter-evidence,

---

18. The *Vortex Fishing II* court explained:
[O]nce the debtor has satisfied the burden of demonstrating the reasonableness of the fees requested, "[i]t is then the petitioning creditors' burden to establish, under the totality of the circumstances, that factors exist which overcome the presumption, and support the disallowance of fees." However, this does not give the petitioning creditor license to conduct additional discovery and present evidence on an issue that has already been decided. The rebuttable presumption framework allows the court, which by this point in the process has heard all the evidence surrounding dismissal, to make 'an informed examination of the entire situation' without the burden of conducting another mini-trial.
*Vortex Fishing II,* 379 F.3d at 707 (citations omitted).

that $42,257 was a "reasonable" amount to award.

■ Nor was the court persuaded that Sofris carried his burden to establish that the totality of the circumstances rebut the presumption in favor of the award. Pertinent circumstances include: (1) the merits of the petition; (2) the conduct of the alleged debtor; (3) reasonableness of the actions by petitioning creditors; (4) the motivation and objectives behind filing the petition; and (5) other case-specific matters. *Vortex Fishing II,* 379 F.3d at 707–08. Sofris made no such showing.

We cannot say that the court abused its discretion as to the amount of the award or the appropriateness of making an award in light of the totality of the circumstances.

## IV

Nor do we perceive material error in the court's treatment of the putative § 303(i) release that was executed by Robert Nathan posing as president of the debtor. Although it would have been better if there had been precise findings, the court's reason for disregarding the putative release was not ambiguous. In the procedural posture of the case in which the court had recognized the Marlowe–Shlush Faction as being in control of the debtor, Mr. Nathan was an imposter. The court had recognized the Marlow–Shlush Faction as legitimate. The court correctly noted that the agreement would be effective only if it later was determined by state court that the Mayman–Nathan Faction controlled the debtor.

As a matter of procedure, the court's recognition of the contingency that the Mayman–Nathan Faction might ultimately prevail in its quest for control of Maple–Whitworth constitutes a recognition that relief could become appropriate under Federal Rule of Civil Procedure 60(b)(5) or (6) on the basis that the release was validly

executed. Fed.R.Civ.P. 60(b)(5)-(6), *incorporated by* Fed. R. Bankr.P. 9024. A motion under Rule 60(b)(5) or (6) need only be made "within a reasonable time," which necessarily depends upon the factual context. *Id.* On such a motion, the prospect of which appears increasingly remote because the state court judgment appears to be final, the $42,257 judgment could be vacated and any sums collected could be recovered on a theory of money had and received.

## CONCLUSION

We conclude that the § 303(i) liability of petitioners in a dismissed involuntary bankruptcy case is joint and several. There is no requirement that all petitioners be named in, and served with, a § 303(i) motion. Among other procedures, equitable rights of contribution and indemnity are available to protect a petitioner who is unfairly singled out in such a motion. There having been no abuse of discretion in the award, it is AFFIRMED.

NIELSEN, Bankruptcy Judge, dissenting in part and concurring in part:

As I am troubled by my able colleagues' application of an important bankruptcy statute, I respectfully dissent from sections I–C and II of the majority opinion. Specifically, the plain language of § 303(i)(1) requires that all petitioning creditors be served with an award motion. I must also dissent from a disregard of the error in the trial court's refusal to determine whether the alleged debtor had previously waived the fee award it sought. I gladly join in affirming the bankruptcy court's exercise of discretion to award fees and costs against appellant Sofris.

## I

This appeal rests on a correct reading of § 303(i), which provides:

If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and *if the debtor does not waive the right to judgment under this subsection,* the court may grant judgment—

> (1) *against the petitioners* and in favor of the debtor for—
>
> (A) costs; or
>
> (B) a reasonable attorney's fee; or
>
> (2) *against any petitioner* that filed the petition in bad faith, for—
>
> (A) any damages proximately caused by such filing; or
>
> (B) punitive damages.

11 U.S.C. § 303(i) (emphasis supplied).

## A

We know that § 303(i) is the exclusive source for damages predicated upon the filing of an involuntary bankruptcy petition. *Miles v. Okun (In re Miles),* 430 F.3d 1083, 1089–92 (9th Cir.2005) (state tort law action by non-debtors for damages from an involuntary bankruptcy is completely preempted by § 303).

The facts of this case involve conflicting claims regarding ownership and control of the alleged debtor. When the involuntary petition was dismissed, the alleged debtor failed to comply with an express court order to serve all petitioning creditors with its fee award request. The bankruptcy court nonetheless awarded fees and costs against some, but not all of the petitioning creditors. The question before us is how § 303(i) should be applied in this situation. The majority concludes that service on all petitioners is not required and imposes possible contribution liability on *all* of the petitioning creditors, whether they were served with the fee request or not.

The majority begins correctly. I join section I–A as it instructs that our statutory analysis starts with the language of the statute, that the § 303(i) scheme is construed as an integrated whole and that the Bankruptcy Code's construction is an endeavor where a provision appearing possibly ambiguous in isolation can be clarified by consideration of the remainder of the statutory scheme.

I would add that where, as here, the statute's language is plain, our sole function is to enforce it according to its terms. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation omitted). We give each word its common usage. *Id.; see also Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (looking to the clear meaning of the word "neglect" by citing a dictionary definition). We must give meaning and import to every word in a statute. *Negonsott v. Samuels,* 507 U.S. 99, 106, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). We presume that "'Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.'" *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (citation omitted).

Applying these rules, Congress expressly stated "against the petitioners" in identifying those potentially liable for attorney fees and costs. § 303(i)(1). Simultaneously, it omitted this language in providing that a court may award punitive damages against "*any* petitioner that filed the petition in bad faith." § 303(i)(2) (emphasis supplied). Thus, liability for a bad faith petition expressly need not be considered against all petitioners. Presuming that Congress has acted intentionally and purposefully in choosing different language for two adjacent subsections, the common meaning would be that all petitioning cred-

itors must be considered for potential § 303(i)(1) liability.

It is difficult to perceive how § 303(i)(1)—authorizing an award against "the petitioners"—can be read as "some" or a "few" of them. Such a reading is particularly suspect when Congress, in the same statute, provides express verbiage to identify less than all petitioners for bad faith awards in § 303(i)(2): "against any petitioner". It is difficult to appreciate why the drafters would use both "the petitioners" and "against any petitioner" to mean exactly the same thing in adjacent subsections of the same statute. A natural reading of § 303(i) is that, absent bad faith, a fee and cost award is to be considered against all petitioners. "When the words of a statute are clear, 'judicial inquiry is complete.'" *Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436, 441 (9th Cir. BAP 2004) (citation omitted).

### B

At least initially, the trial judge agreed with this construction of the statute. Upon discovering that the alleged debtor had not served all petitioning creditors, the court ordered service on all such parties:

Another reason I think I should continue this is, I think this motion should be served on all the petitioners and they should be given notice to the fact that they might be liable for costs, attorney's fees and damages. It is a pretty serious matter. I think they should be—I want to be sure that they know what is going on.

Counsel replied:

Sure, your Honor. Well, fees were not requested against them because Michael Sofris was the spearhead and he was the main named petitioning creditor on the involuntary petition and there would be joint and separate liability. But in any event, notice can be served on them, even though fees were not requested against them.

The court responded:

Okay. Well, I think—I think—*well there is an issue, too, as to whether you can pick and choose.*

Hrg. Tr. 2, January 4, 2006 (emphasis supplied).

At a subsequent hearing the court indicated:

However, I do think it is appropriate to impose attorney's fees and costs *on the petitioning creditors* here. I think that essentially a presumption in the law, [sic] I have discretion whether to award those or not. I think given this case, given the lack of evidence to show that the—that there wasn't a bona fide dispute regarding the petitioning creditors' claims, I am going to make the award.

So I am going to grant the attorney's fees and costs as *against all of the petitioning creditors, which I think I have to do under the statute.* So, to that extent I am granting the motion and the total of that sum of course would be the $42,257.

Hrg. Tr. 9, February 1, 2006 (emphasis supplied).

But it was not to be. Although the court clearly stated its intent to sanction all petitioners, two of them (Sinclair and Zeff) were excluded from the award because they were not served as directed. This change in the intent to sanction all petitioners occurred in open court. Upon discovery of the service failure, the court summarily resolved the matter:

All right. Whoever they—whoever of the petitioning creditors got served—I thought that was all of them, at least initially, but maybe it wasn't.

MR. FAITH: Initially that is correct, your Honor, but there were two more, I believed, that supplemented.

THE COURT: All right. Whoever got served, whoever had notice. I think that is clear, isn't it?

Mr. Kaplan: Yes.

*Id.* at 10–11.

While it is clear that bankruptcy courts have authority to sanction less than all petitioning creditors under § 303(i), I doubt that discretion on such a serious matter can be exercised "on the fly" as occurred here. More importantly, movants cannot, deliberately or through error, bring less than all petitioning creditors before the court under the clear meaning of § 303(i)(1).[19]

### C

I also join the majority regarding the bankruptcy court's broad discretion in § 303(i) awards. First, the statute's use of the permissive "may," rather than the mandatory "shall," contemplates that fees and costs will not always be awarded. *Higgins v. Vortex Fishing Sys., Inc.,* 379 F.3d 701, 705–06 (9th Cir.2004). A court exercises discretion in the award. *Id.* at 706.

Higgins adopted the "totality of the circumstances" as the appropriate award standard. *Id.* at 707. However, the panel cautioned it did not abandon the premise that any petitioning creditor should expect to pay debtor's attorney's fees and costs, if the petition is dismissed. An alleged debtor's motion for fees and costs raises a rebuttable presumption that reasonable fees and costs are authorized. This presumption reinforces the principle that filing an involuntary petition is not lightly undertaken. It discourages inappropriate, frivolous filings. An involuntary petition should be a measure of last resort, since even if filed in good-faith, it can chill credit and supply sources and scare away customers. *Id.* at 707.

Higgins noted that:

[O]nce the debtor has satisfied the burden of demonstrating the reasonableness of the fees requested, '[i]t is then the petitioning creditors' burden to establish, under the totality of the circumstances, that factors exist which overcome the presumption, and support the disallowance of fees.' However, this does not give the petitioning creditor license to conduct additional discovery and present evidence on an issue that has already been decided. The rebuttable presumption framework allows the court, which by this point in the process has heard all the evidence surrounding dismissal, to make 'an informed examination of the entire situation' without the burden of conducting another minitrial.

*Id.,* (citations omitted).

Finally, bankruptcy courts consider additional relevant factors before awarding attorney's fees and costs: (1) the merits of the involuntary petition; (2) any improper conduct of the alleged debtor; (3) reasonableness of the actions by petitioning creditors and (4) the motivation and objectives behind filing the petition. This list is not exhaustive. *Id.* at 707–708.

Here the bankruptcy court, possibly dealing with a demanding docket and well aware that it could not enter judgment against unserved petitioners, elected to

---

**19.** The majority reports that their close examination of *Vortex Fishing* reveals that our circuit affirmed an award made against only some petitioners. I've already indicated my belief that bankruptcy courts can do this, under procedurally proper circumstances. My reading of *Vortex* fails however, to discern that this precise issue was either raised or decided in that case.

conclude the matter by an award against those whom the alleged debtor managed to serve, rather than granting a second continuance due to service issues. This practical resolution nevertheless allowed the alleged debtor to elude the clear requirement of § 303(i)(1) that all petitioners are to be brought before the court.

### D

I detect no undue procedural obstacle from a clear statutory reading that requires naming and serving all petitioners when seeking a § 303(i)(1) award. Judicial discretion and flexibility are preserved. Individual petitioners are free to make their case to the judge as to why the rebuttable presumption of a reasonable fee award should not be imposed against them. Indeed, I question how a bankruptcy court could engage in the broad "totality of the circumstances" review mandated by *Higgins,* when robbed of the opportunity to have all petitioners appear and potentially explain their individual roles in prosecuting the petition.[20]

### II

The majority evades the requirement of presenting all petitioners to the court by a remarkable wholesale importation of common law tort remedies into a federal cause of action that is exclusively statutory. We are instructed that state tort lawsuits are not to be used for such damages. *Miles,* 430 F.3d at 1091. It is unclear what perceived ambiguity in § 303(i) drives this incorporation. But there must be something. Otherwise, we are to stop our work

and simply enforce the statute according to its terms. *Ron Pair Enters.,* 489 U.S. at 241, 109 S.Ct. 1026.

### A

The majority states that § 303(i)(2) (the subsection not applicable to this case) mentions "damages proximately caused" and "punitive damages" and these terms are "... both familiar concepts in the common law of tort."[21] From this, it follows for them that Congress based its scheme of § 303(i) remedies on general common law tort principles, which traditionally result in joint and several liability.

It is important to first note that the statute does not mention joint and several liability. Accordingly, this liability concept cannot itself cause an ambiguity that prevents application of the statute as written. Nor is there a need, in my view, for the extensive discussion of this liability theory that the majority provides. As they recognize, the error assigned by appellant is not that the sanction imposed involved joint and several liability. As they further recognize, we have yet to expressly read this liability concept into the award statute, treating it to date only by implication. I would leave a definitive discussion and possible incorporation of joint and several liability in some form, if at all, for another day and case, when it is clearly raised.[22]

### B

The majority's thorough discussion of joint and several liability, contribution and indemnity highlights the mischief that can

---

**20.** If service on all petitioners could be established as impossible, I would presume the court could still act against those capable of being served. That is certainly not the circumstances of this case.

**21.** As no authority is cited for this proposition, I'm allowed to quibble that my government dictionary advises proximate cause is also a criminal term and that punitive dam-

ages are sometimes available in breach of contract actions. *Black's Law Dictionary* 234, 418 (8th ed.2004).

**22.** Since the statute neither includes nor excludes this concept, I see no reason to prohibit bankruptcy courts from entering multiple party liability on a basis other than joint and several in an appropriate case.

occur by the wholesale application of common law tort concepts into an exclusively bankruptcy statutory cause of action. Under the majority's analysis, there is no need to name or even notice all petitioners when a § 303(i)(1) award is sought against fewer than all. Unnamed and unserved petitioners do not escape liability, however. They can be brought to account, possibly long after the award was entered in their absence, when the named party decides it has paid a disproportionate and inequitable share of the liability. The named party can even assign this contribution right to others. While the unnamed parties might mount an indemnity defense, we are not told if they may ask the bankruptcy judge to reopen the original award itself. Vehicles to mount this satellite litigation might include a joinder motion,[23] a third-party complaint in a separately filed adversary, third-party practice in the contested matter itself, (if the court so permits) or an independent contribution action.

The majority admits to "practical disadvantages" and "obvious inefficiencies of redundant litigation" arising under this incorporation. They correctly raise the possibility that issue or claim preclusion of the award "may be clouded" as to unserved petitioners. However salutary this tort scheme works in non-bankruptcy courts, in bankruptcy it is far better to establish a single forum granting all potentially liable parties the opportunity to appear when adjudicating a § 303(i)(1) matter in the first instance. More than an efficient procedure, it is, I believe, statutorily required.[24]

In sum, the remedial scheme of § 303(i) is comprehensive, specifically addressing the full range of remedies from costs and fees to compensatory and punitive damages. It is for Congress to decide what penalties are appropriate, when they are to be utilized and who benefits from them. Those unsatisfied with the remedies provided in the Bankruptcy Code should look to Congress for supplementation. *Miles,* 430 F.3d at 1092 (citing cases). For the purposes of this particular case, we need only apply the statute as written. We should close our tort books.

### III

Appellant argues that the court erred in not enforcing an alleged settlement and release, executed on December 12, 2005. The petitioning creditors and alleged debtor purportedly agreed that, in exchange for payment of $1,000, the award motion would be withdrawn. The agreement was signed by Robert Nathan, identified as the alleged debtor's president.

Appellee disputed the release's validity as a "bogus settlement" at the award hearing. The bankruptcy court entered the award without deciding the waiver's validity, apparently believing that state court proceedings would eventually resolve the matter:

> ... if that is a valid settlement, that would sort of supersede what I do here anyway, if in fact that is a—you are talking about the point release, right? ... [i]f it turns out that that is a valid release, then it is a valid release.

Hrg. Tr. 1–2, February 1, 2006.

The majority affirms this procedure, concluding that (1) Mr. Nathan was found to be posing as the debtor's president and was an imposter and (2) regardless, if a

---

**23.** If I am correct that the statute requires the movant to bring all petitioners before the court, then to require the respondent to do, by a Civil Rule 21 motion, that which the movant should have done is hardly equitable.

**24.** The majority's holding regarding unserved petitioners' contribution liability creates due process concerns. *See, e.g., Miller v. Cardinale (In re DeVille),* 361 F.3d 539, 548–49 (9th Cir.2004) (discussing particularized notice requirements for sanctions).

state court subsequently ruled that Mr. Nathan's faction was in control, then the waiver would be effective and sums paid could be collected in a subsequent suit. This affirmance allows abdication of bankruptcy court jurisdiction over this matter without a definitive ruling.

Since I lack the majority's information on the unmasking of Mr. Nathan as an imposter [25], I can only comment that if the bankruptcy court believed his agreement was unauthorized, it should have so ruled and rejected the waiver. It was inappropriate to leave the matter for subsequent resolution by our state colleagues.

We recently noted that a waiver by the debtor of the right to judgment is one of only two charted safe harbors from § 303(i) remedies. *Wechsler v. Macke International Trade, Inc. (In re Macke International Trade, Inc.)*, 370 B.R. 236, 256–57 (9th Cir. BAP 2007). Concordantly, our circuit characterizes the absence of a waiver as being one of "only two prerequisites" for an award under § 303(i)(1). *Higgins*, 379 F.3d at 705. It is an important matter. When clearly raised, as it was here, it must be disposed of prior to making an award.[26] It cannot be left for subsequent resolution by another court.

### IV

In conclusion, I perceive no error in the bankruptcy court's award of attorney's fees and costs against appellant and concur with the affirmance of that award. However, as the bankruptcy court was not permitted to consider an award against all petitioning creditors, solely because of a service failure and given the lack of an express finding that the alleged release was invalid as a waiver of such fees, I respectfully dissent from the majority's disposition and would reverse and remand, on those issues.

**25.** The majority reports an inquiry outside this record reveals a subsequent superior court ruling in favor of one faction. Since there is no indication this was presented to the bankruptcy court, I see no relevance. I would grant appellant's request to strike certain exhibits, including a state court judgment never presented to the bankruptcy court and keep our investigators home. *See* Dorothy W. Nelson, et al., *Ninth Circuit Civil Appellate Practice*, ¶ 4:16 at 4–3 (2001) (citing *United States v. Walker*, 601 F.2d 1051, 1054–55 (9th Cir.1979)); *Morrison v. Hall*, 261 F.3d 896, 900 (9th Cir.2001).

**26.** It may not be necessary to conduct a full evidentiary hearing. The majority believes that a court ruling has been entered between the parties or their privies regarding the alleged debtor's ownership and control. If a binding, final judgment has been entered, it would constitute the basis for a summary preclusion ruling by the bankruptcy court.