# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1186
_____

Henry Stursberg

*Plaintiff - Appellant*

v.

Morrison Sund PLLC

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 18, 2023
Filed: August 13, 2024
_____

Before SMITH, Chief Judge, LOKEN and COLLOTON,[*] Circuit Judges.
_____

LOKEN, Circuit Judge.

Henry Stursberg, a resident of Philadelphia, owns a financial consulting firm that manages and coordinates commercial loans and arranges financing for, among

_____

[*]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. See 28 U.S.C. § 45(a)(3)(A). Judge Colloton became chief judge of the circuit on March 11, 2024. See 28 U.S.C. § 45(a)(1).

other clients, mobile home parks around the country, including two parks in Big Lake and Princeton, Minnesota. In mid-2018, Stursberg commenced a lawsuit in Minnesota state court alleging misconduct by the co-owner of those two distressed parks. On March 18, 2019, Stursberg retained Matthew Burton, a member of the Minnesota law firm Morrison Sund PLLC, to represent the plaintiff. In November 2019, alleging that Morrison Sund had run up legal fees of approximately $300,000 "and accomplished basically nothing," Stursberg notified Burton that he intended to change counsel.

Morrison Sund withdrew and sent Stursberg emails advising him of outstanding legal fees owed. In early December, Burton warned Stursberg that if an agreement for payment was not reached, "I am going to commence collection steps." On January 8, 2020, Morrison Sund filed an involuntary bankruptcy petition in the United States Bankruptcy Court for the District of Minnesota, naming Stursberg as the debtor. After three years of contentious litigation by both parties in state and federal courts in Minnesota and Pennsylvania, Stursberg appeals the district court's order dismissing state law tort claims against Morrison Sund as preempted by 11 U.S.C. § 303(i) of the Bankruptcy Code. Reviewing the grant of a motion to dismiss *de novo*, we affirm. See R. J. Reynolds Tobacco Co. v. City of Edina, 60 F.4th 1170, 1174 (8th Cir 2023) (standard of review).

## I. The Bankruptcy Code Context

While most bankruptcy cases are initiated by the debtor, involuntary cases are initiated by a creditor. Section 303 governs the administration of involuntary bankruptcy cases. "[T]he filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." In re Reid, 773 F.2d 945, 946 (7th Cir. 1985). In § 303(i), Congress recognized that creditors may file involuntary petitions for the improper purpose of harassing the debtor, rather

than protecting all creditors, and provided debtors with specific remedies for that misconduct:

> **(i)** If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment–
>
>> **(1)** against the petitioners and in favor of the debtor for–
>>> **(A)** costs; or
>>> **(B)** a reasonable attorney's fee; or
>>
>> **(2)** against any petitioner that filed the petition in bad faith, for–
>>> **(A)** any damages proximately caused by such filing; or
>>> **(B)** punitive damages.

Section 303(j) authorizes the bankruptcy court to dismiss an involuntary petition filed under § 303 with "notice to all creditors."

In Section 305, entitled "Abstention," Congress gave bankruptcy courts the discretion, after notice and hearing, to dismiss or suspend *any* bankruptcy case at any time if it determines that "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Section 305 "authoriz[es] bankruptcy courts to abstain from jurisdiction when so doing better serves the interests of creditors and the debtor." In re Kujawa, 270 F.3d 578, 581 (8th Cir. 2001). An order dismissing or suspending under § 305(a) "is not reviewable by appeal or otherwise" to the court of appeals or to the Supreme Court. § 305(c). Section 305 contains no remedial provision. When used in this context -- the filing of an allegedly bad faith involuntary petition -- a § 305(a)(1) dismissal affords petitioning creditor(s) an opportunity to mitigate the alleged harm they have caused the debtor by dismissing the involuntary case.

## II. The Bankruptcy Court Proceedings

On January 15, 2020, one week after Morrison Sund filed the involuntary petition, the bankruptcy court held a hearing on Stursberg's request, not opposed by Morrison Sund, to dismiss the case under 11 U.S.C. § 305(a)(1). Bankruptcy Judge Kathleen Sanberg expressed "a little surprise[] to have the request under a 305 rather than 303," which governs involuntary cases. Counsel for Stursberg explained that, while Stursberg was seeking attorney's fees and damages under § 303 for a wrongful involuntary petition, a dismissal under § 303 requires notice to all creditors and a hearing, see § 303(j), which would magnify the financial damage to Stursberg, whereas the court may dismiss under § 305 "after notice and a hearing."

After extensive argument the bankruptcy court granted the requested § 305 dismissal. Noting prior cases holding that an involuntary petition "is not to be used as a debt collection practice," the court stated to counsel for Morrison Sund that this involuntary petition "was used as pressure, if you will, in order to collect the firm's fees. It wasn't done in the interest of all creditors, and that's what an involuntary is to do. . . . It was being used as a hammer . . . . [W]hen I look at this whole case . . . quite frankly, it smells bad." The court dismissed the case under § 305(a); granted Stursberg's request for an order under § 303(k)(2) prohibiting consumer protection agencies from reporting information relating to the involuntary petition; and sealed the case records. In ruling that it lacked Bankruptcy Code authority to grant Stursberg's request to expunge the record, the court observed: "in terms of . . . his business is over or his . . . career is ruined . . . there's another remedy for that . . . . either coming back to this court or going to another court."

On March 26, 2020, Stursberg filed a diversity action in the United States District Court for the Eastern District of Pennsylvania, accusing Morrison Sund and Burton of "extreme bad faith in filing a frivolous involuntary bankruptcy petition" and asserting six state law tort claims -- abuse of process, wrongful use of civil

proceedings, intentional infliction of emotional distress, intentional interference with existing and prospective contractual relations, breach of contract, and credit defamation. Morrison Sund moved to dismiss.

On May 18, Stursberg filed a motion in the Minnesota bankruptcy court to recover attorney's fees and costs under 11 U.S.C. § 303(i)(1), "reserving [his] right to file and pursue claims and remedies under 11 U.S.C. § 303(i)(2) or otherwise." At the end of a June 10 hearing, the bankruptcy court denied the motion. First, the court held that under Bankruptcy Rule 7054, the request for fees and costs was untimely. Cf. Fed. R. Civ. P. 54(d)(2)(B)(i). Second, noting "a lack of binding Eighth Circuit authority," the court applied "the Bankruptcy Code's plain language and follow[ed] the underlying intent of Congress" and held "that dismissal under Section 305 precludes [Stursberg's] recovery of Section 303(i) damages." Third, expressing concern that Stursberg "is pursuing double recovery" because the Pennsylvania complaint cites Stursberg's fees and costs as part of the damages, the court held that it "declines to exercise its discretion to award fees and costs under Section 303(i)."

### III. The District Court Proceedings

In December 2020, the Eastern District of Pennsylvania dismissed Stursberg's state law claims without prejudice, concluding it lacked personal jurisdiction over four claims and venue was improper for the other two. The court declined to consider whether Stursberg's state law tort claims were preempted by the Bankruptcy Code. On February 23, 2021, Stursberg filed this case in the Eastern District of Pennsylvania, again asserting state law claims for abuse of process and wrongful use of civil proceedings. Morrison Sund moved to dismiss the complaint or to transfer

the case to the District of Minnesota due to improper venue. The district court granted the motion to transfer under both 28 U.S.C. § 1406 and § 1404(a).[1]

Back in the District of Minnesota, Morrison Sund renewed its motion to dismiss the transferred case, relying in part on the bankruptcy court's ruling that Stursberg could not pursue damages under § 303(i) because the case was dismissed under § 305. The district court did not take a position on this issue, noting "there are cases going the other way." Stursberg v. Morrison Sund PLLC, 648 F. Supp. 3d 1075, 1089 n.9 (D. Minn. 2023). The court rejected Morrison Sund's argument that the bankruptcy court's judgment dismissing Stursberg's involuntary petition precluded this damages action because a § 305 abstention order "is not 'on the merits' for purposes of claim preclusion." Id. at 1085. However, the court granted Morrison Sund's motion to dismiss because "Stursberg's state tort claims are at least conflict preempted." Id. at 1087. "The conflict arises from Congress's evident objective to create a damages claim arising from an involuntary case's bad faith filing and place exclusive responsibility for adjudicating such claims in bankruptcy courts." Id.

## IV. The Interplay Between Section 303(i) and Section 305

The parties' appellate briefs focus almost entirely on the question of federal preemption, a complex subject. That focus ignores the complex procedural history of this litigation, a history driven by Stursberg's attempt to split his claims for attorney's fees and costs, and for tort-based damages proximately caused by the filing of a "bad faith" involuntary petition, between federal courts in Minnesota and

---

[1]As this is a diversity case, whether the case was transferred under § 1406 or § 1404 may affect the substantive state law that applies. See Wisland v. Admiral Beverage Corp., 119 F.3d 733, 736 (8th Cir. 1997) (law of transferee court applies to § 1406(a) transfer), cert. denied, 522 U.S. 1112 (1998); Ferens v. John Deere Co., 494 U.S. 516, 531 (1990) (law of transferor court applies to § 1404 transfer). We need not consider that issue to resolve this appeal.

Pennsylvania. The rules barring claim splitting, which lie at the heart of *res judicata* (claim preclusion), are also a complex subject, but they apply even in cases where federal preemption is not an issue. See generally Restatement (Second) of Judgments §§ 19, 24-26 (Am. L. Inst. 1982). Section 303(i) does not expressly preempt state law tort remedies. In the absence of explicit preempting statutory language, courts apply a presumption "that the historic police powers of the States [are] not to be superseded by [federal law]." Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008) (quotation omitted). "It is, to say the least, difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." Medtronic, Inc. v. Lohr, 518 U.S. 470, 487 (1996) (quotation omitted).

In this case, we review the grant of Morrison Sund's motion to dismiss a complaint that the Eastern District of Pennsylvania transferred to the District of Minnesota for proper venue. The complaint raised *only* state common law tort claims. The transferring court did not rule on Morrison Sund's motion to dismiss those claims on the merits. Federal jurisdiction is based on diversity, so federal question removal issues that have dominated the preemption analysis in cases such as In re Miles, 430 F.3d 1083 (9th Cir. 2005), are not at issue. Rather, our task as a federal appellate court exercising diversity jurisdiction is to determine the merits of a Rule 12(b)(6) motion the Eastern District of Pennsylvania did not reach.

A federal cause of action can preempt overlapping state law tort claims, for example, when the federal statute reflects the congressional intent "to replace the patchwork of existing state regulations with a national standard." In re Aurora Dairy Corp. Organic Milk Mktg & Sales Pracs. Litig., 621 F.3d 781, 794 (8th Cir. 2010). Or when state common law actions would impose substantive requirements in conflict with those imposed by federal law. E.g., Symens v. SmithKline Beecham Corp., 152 F.3d 1050, 1056 (8th Cir. 1998). There is no indication of any substantive inconsistency here; the issue is interference with uniform federal court administration of the Bankruptcy Code.

The question is whether an involuntary bankruptcy debtor may bring a state common law action to remedy alleged harm caused by a creditor's improper involuntary petition. This is a question of federal law, but the answer does not necessarily turn on preemption principles. As Justice Scalia explained, "[t]he proper response to the presentation of a nonexistent claim to a state court is *dismissal*." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 18 (Scalia, J., dissenting) (emphasis in original). That is equally true when a nonexistent state law claim is presented to a federal court exercising diversity jurisdiction. As the concurring judge in Miles observed, citing Justice Scalia's opinion, "there is another, simpler ground for reaching the same result" than preemption. 430 F.3d at 1096 (Berzon, J., concurring). We agree.

We think it obvious from the structure and purpose of § 303 that Congress intended that the federal court that dismisses an involuntary case has *exclusive* jurisdiction to enforce the debtor remedies provided in § 303, including remedies for bad faith filings under § 303(i), and for fraudulent filings under § 303(k)(1).[2] Indeed, Bankruptcy Judge Sanberg acted on this principle when she granted Stursberg § 303(k)(2) relief in granting his motion to dismiss the involuntary case. We agree with the Ninth Circuit Bankruptcy Panel that:

> the plain meaning of § 303(i) provides that, unless an involuntary petition has been dismissed with the parties' consent, and without the debtor's waiver of the right to judgment under § 303(i), the bankruptcy court, based upon the totality of the circumstances, may, in its discretion, award attorney's fees and costs under § 303(i)(1) for a § 305(a)(1) dismissal of an involuntary petition.

---

[2]This analysis does not apply to state law claims by non-debtors because only debtors may recover damages under § 303(i). See Rosenberg v. DVI Receivables XVII, LLC, 835 F.3d 414 (3d Cir. 2016).

In re Macke Int'l Trade Inc., 370 B.R. 236, 248-53 (B.A.P. 9th Cir. 2007). All involuntary petitions are filed under § 303. The words "under this section" in § 303(i) immediately follow the word "petition," not the word "dismisses." Therefore, applying the canon of statutory construction known as the doctrine of the last antecedent, the court in Macke concluded that § 303(i) applies to all involuntary case dismissals, including "abstention" dismissals under § 305(a)(1). We agree.

The same principle of statutory construction applies to the award of damages under § 303(i)(2), although damage awards raise additional issues, as this case illustrates, because state tort law principles and remedies may well be relevant. Federal courts in many diversity cases look to state law in applying federal statutes. We see no reason why state tort law is irrelevant in determining whether a petitioning creditor's harassing involuntary petition was a "bad faith" filing.[3] Courts taking the contrary view when the involuntary case has been dismissed under § 305(a)(1) have relied on a single statement in the legislative history of § 303(i) -- "[d]ismissal in the best interests of creditors under section 305(a)(1) would not give rise to a damages claim." Koffman v. Osteoimplant Tech., Inc., 182 B.R. 115, 127 (D. Md. 1995); see Macke, 370 B.R. at 250 n.12. We seldom rely on legislative history and never when it is contrary to the plain meaning of the statute. Here, as § 305(a)(1) is silent on the

---

[3]An involuntary case is a "core" bankruptcy proceeding. It is accepted that the bankruptcy court has jurisdiction to order the petitioning creditor to pay the involuntary debtor's costs and attorney's fees under § 303(i)(1). It may not always be clear that the bankruptcy court, a non-Article III court, has the power "to adjudicate, render final judgment, and issue binding orders" in a § 303(i)(2) damage action by the debtor based on traditional state law tort theories. See Stern v. Marshall, 564 U.S. 462, 494 (2011). We need not address this potential issue but note that, if it arises, federal law gives the district court practical authority to resolve any bankruptcy court authority uncertainty by *de novo* review and final judgment of the bankruptcy court's § 303(i)(2) order, as it does with matters "related to" the bankruptcy proceeding, see 28 U.S.C. § 157(c)(1), or by withdrawing part of the referred case. See id. at 502, discussing 28 U.S.C. § 157(d).

question of remedies and its abstention order is not subject to appellate review, we think it likely that this ambiguous legislative history referred to damages *for the abstention order*, not that damages for a fraudulent or bad faith involuntary petition are never available under § 303(i) when the involuntary case was dismissed by a § 305(a)(1) abstention order.

## V. Discussion

If the federal court in Minnesota had exclusive jurisdiction to enforce the remedies for an alleged bad faith involuntary petition, the answer to this appeal is simple -- the district court's dismissal of Stursberg's state common law action transferred by the Eastern District of Pennsylvania must be affirmed because that court lacked jurisdiction to afford this relief. As Justice Scalia put it, "The proper response to the presentation of a nonexistent claim to a state court," here, a federal court exercising diversity jurisdiction, "is *dismissal*." Beneficial Nat'l Bank, 539 U.S. at 18.

Stursberg argues that if the limited § 303(i) remedy excludes state common law tort remedies for a bad faith involuntary petition, then an involuntary debtor in his situation faces a Hobson's choice that leaves him with a right without a remedy -- filing a motion to dismiss under § 303(j) requires notice to all creditors and a hearing, greatly increasing the financial and reputational harm caused by the involuntary petition; filing a motion to dismiss under § 305(a)(1) greatly reduces that risk but leaves the involuntary debtor with *no* claim for damages under § 303(i)(2).

This argument turns on an assumption -- that the bankruptcy court correctly ruled at the end of the June 10, 2020 motion hearing, based on "the plain language and the legislative history" of § 303(i), "that a dismissal in the best interests of creditors under 305(a)(1) would not give rise to a damages claim" under § 303(i). The court accurately stated "there's a lack of binding Eighth Circuit authority" on this

-10-

issue. But it is not an issue with which we are totally unfamiliar. In In re Kujawa, we affirmed but reduced a bankruptcy court's award of attorney's fees and a punitive monetary sanction to an involuntary debtor against an attorney who "behaved improperly in assisting in the drafting of the involuntary petition" *that was subsequently dismissed pursuant to 11 U.S.C. § 305(a)*. 270 F.3d at 581. Though not controlling authority, Kujawa supports our conclusion in Part IV that a dismissal in the best interests of creditors under § 305(a)(1) does not preclude an involuntary debtor's subsequent damages claim under § 303(i)(2).

If § 303(i) provides an exclusive remedy in federal court, then a debtor's state common law *claims* are precluded and/or preempted. Complete remedial preemption permits the removal of state court actions based on federal question jurisdiction in very limited circumstances, primarily the LMRA, ERISA, and the National Bank Act. See Beneficial Nat'l Bank, 539 U.S. at 8-11. But this is an action Stursberg filed in federal court based on diversity jurisdiction seeking damages § 303(i)(2) authorizes for a creditor's filing of a "bad faith" involuntary petition. Removal is not at issue.

Federal courts will look to state tort law *principles* in determining an issue such as bad faith. Determination of the proper *remedy* for a bad faith filing is a fact-intensive question of federal law, and some state law remedies might be beyond what a bankruptcy court should award. And because Congress and the federal courts "decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized," we disagree with the argument that the Constitution's Bankruptcy Clause is undermined by allowing a debtor victim to seek remedies that mirror state tort law remedies in a § 303(i) damages motion. See Gonzales v. Parks, 830 F.2d 1033, 1036 (9th Cir. 1987). Tort liability for bad faith filings, in federal diversity as well as in state court litigation, is traditionally the province of state law. Cf. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002) (the Federal Rules of Civil Procedure do not preempt state law tort claims based on misconduct in federal litigation). To rule that

a bankruptcy court is conflict-preempted from awarding damages in a § 303(i)(2) action after a § 305 dismissal because § 305 confers no remedial authority would likely "preempt" many § 303(i)(2) damage claims that a federal court looking to state law should allow.

In sum, § 303(i)(2) damages are allowed when an involuntary petition is dismissed under § 305(a)(1). But § 303(i)(2) conflict preempts specific state law tort claims. Instead, a debtor victim can use general state law principles to show that one or more creditors acted in bad faith when they filed the involuntary petition.

This conclusion does Stursberg no good in this case for a simple reason basic to the law of claim and issue preclusion. The district court rejected Morrison Sund's preclusion argument based on Bankruptcy Judge Sanberg's initial order dismissing the involuntary case under § 305. But the proper focus was Judge Sanberg's subsequent order denying Stursberg's motion for attorney's fees and costs under § 303(i)(1) because "dismissal under Section 305 precludes recovery of Section 303(i) damages." That was a final order of the bankruptcy court Stursberg did not appeal. It therefore governs this subsequent proceeding between the same parties arising out of the same operative facts. Had Stursberg successfully appealed Judge Sanberg's order, he could then have brought § 303(i)(2) tort claims in the bankruptcy forum. See 28 U.S.C. §§ 1334(b), 157(b)(1) and (c)(1); Stern, 564 U.S. at 473-75, 499. The state law *claims* would have been preempted by § 303 but not the claim for damages in federal court. It is fair to infer that Stursberg did not appeal because that likely would have frustrated his claim-splitting strategy to seek fees in Minnesota and tort damages in Pennsylvania. In addition, he would have had to overcome Judge Sanberg's ruling that his § 303(i)(1) motion was untimely. Whatever the reason, his present assertion that the bankruptcy court's rulings left him "with no remedy for

damages under the Bankruptcy Code" for Morrison Sund's alleged bad faith involuntary petition is without merit.

The judgment of the district court is affirmed.

COLLOTON, Circuit Judge, concurring in the judgment.

The question presented in this appeal is whether appellant Stursberg's state law tort claims are preempted by the Bankruptcy Code. The district court ruled that the claims are preempted and dismissed Stursberg's complaint. I would affirm the judgment on the ground that the preemption ruling was correct.

The Bankruptcy Code establishes a comprehensive remedial scheme to compensate a debtor who is harmed by the filing of an involuntary bankruptcy petition that is dismissed other than on consent of the parties. 11 U.S.C. § 303(i). The court may award costs and attorney's fees in favor of the debtor; when an involuntary petition is filed in bad faith, the court may award damages proximately caused by the filing and punitive damages. *Id.* "Congress rejected other penalties, including the kind of substantial damage awards that might be available in state court tort actions." *Miles v. Okun* (*In re Miles*), 430 F.3d 1083, 1090 (9th Cir. 2005); *see Gonzales v. Parks*, 830 F.2d 1033, 1036 (9th Cir. 1987). The tort claims brought by Stursberg are preempted because "state law cannot add to the remedial scheme Congress created under the Bankruptcy Code." *Miles*, 430 F.3d at 1095 (Berzon, J., concurring in part and concurring in the result). This is a matter of ordinary preemption. The separate doctrine of "complete preemption" need not be considered in this case.

Stursberg's principal argument against preemption is that the inability to pursue state tort claims would force a putative debtor to make a "Hobson's choice." He maintains that in order to seek damages under § 303(i) on dismissal of a petition, he

-13-

must notify all of his creditors and endure a public hearing under 11 U.S.C. § 303(j) that would serve only to increase his damages. He posits that his other choice is to seek "dismissal through abstention" under 11 U.S.C. § 305(a)(1), but forego any right to damages for wrongful filing of an involuntary petition.

The Bankruptcy Code does not force such a choice because a debtor like Stursberg may seek damages under § 303(i) after a dismissal under § 305(a)(1). A dismissal under § 305(a)(1) requires a judicial determination that "the interests of creditors and the debtor would be better served by such dismissal." The court thus dismisses the petition "other than on consent of all petitioners and the debtor," 11 U.S.C. § 303(i); *cf. id.* § 303(j)(2), and may proceed to award costs, fees, and damages as appropriate. Stursberg's argument proceeds on a mistaken premise that § 303(i) applies only when a court dismisses a petition under § 303. *See Wechsler v. Macke Int'l Trade, Inc.*, (*In re Macke Int'l Trade, Inc.*), 370 B.R. 236, 251 (B.A.P. 9th Cir. 2007).

I respectfully disagree with the majority's disposition of the appeal first as a matter of judicial process. The majority concludes that Stursberg's action is barred by the law of claim preclusion, because the bankruptcy court denied his post-dismissal motion for fees and costs under § 303(i), and Stursberg did not appeal the denial. Morrison Sund did not raise this theory of claim preclusion in the district court or on appeal. Stursberg has had no opportunity to address the issue. Morrison Sund raised a *different* argument for claim preclusion in the district court that was properly rejected by the court and then abandoned on appeal by Morrison Sund. (The district court ruled that the bankruptcy court's judgment dismissing the involuntary petition did not preclude this action because it was not a judgment on the merits.)

The majority's theory of claim preclusion is also a doubtful application of the doctrine. Claim preclusion prevents a party from bringing claims that could have litigated between the same parties in a previous action. *Petrie ex rel. PPW Royalty*

-14-

*Tr. v. Barton*, 841 F.3d 746, 754 (8th Cir. 2016). When Stursberg filed his motion for damages under § 303(i), however, the bankruptcy court already had dismissed the involuntary bankruptcy petition. Whether or not the bankruptcy court should have entertained a motion for an award of damages under federal law based on § 303(i)(2), no party has suggested that Stursberg could have brought state tort claims under § 303(i) in a dismissed bankruptcy case.

For these reasons, I would affirm the district court's conclusion that Stursberg's state tort claims are preempted by federal law. I therefore concur in the judgment.

_____